# DARYL RENARD STEVENS *v.* STATE OF MARYLAND

[No. 1076, September Term, 1974.]

*Decided July 7, 1975.*

The cause was submitted on briefs to ORTH, C. J., and DAVIDSON and LOWE, JJ.

Submitted by *Sanford Z. Berman* and *Pickett, Houlon & Berman* for appellant.

Submitted by *Francis B. Burch, Attorney General, James G. Klair, Assistant Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Ronald G. Scheraga, Assistant State's Attorney for Montgomery County,* for appellee.

LOWE, J., delivered the opinion of the Court.

Because the Court of Appeals has provided for an immediate appeal from a denial of a motion to dismiss based upon double jeopardy, *Neal v. State,* 272 Md. 323, appellant is properly before us. Although his motion to dismiss, denied in the Circuit Court for Montgomery County, asserted grounds of collateral estoppel and res judicata as well as double jeopardy, none of these questions may be reached without crossing the threshold of the jural effect of probation without verdict.

Appellant was arrested as the result of a warranted search of his Prince George's County abode and the seizure of some 28 items which we will assume for purposes of this appeal were stolen from a household in Montgomery County. Apparently as a result of a plea bargain he was charged in the Prince George's County District Court on June 13, 1974 with receiving stolen goods under $100.00. The judge said to

appellant "the Court is convinced of your guilt beyond a reasonable doubt." He then went on to say:

> "The Court will accept the recommendation of the State Mr. Stevens, therefore, we will enter a finding of probation before verdict, place you on 12 months unsupervised probation. Any difficulties in the 12 months Mr. Stevens and you're brought back and I — find you guilty. Do you understand what I'm saying? " [1]

Meanwhile in Montgomery County, appellant had been indicted on June 5, 1974 for burglary (both common law and statutory), daytime housebreaking, breaking and entering, larceny and receiving stolen goods. It is clear from the indictment that the goods he was charged with purloining or intending to purloin or receive were the same he had been charged with receiving in Prince George's County.[2] Appellant moved in the Circuit Court for Montgomery County to dismiss the indictment. The denial of that motion gave rise to this appeal.

Appellant admits that the probation without verdict he received in Prince George's County is incompatible with a guilty verdict, and the latter must yield to the former. The accused can — indeed must — be retired *ab ovo* upon violation of that probation. In *Duppins v. State*, 17 Md. App. 464, 467 we quoted ourselves for emphasis from *Bartlett v. State*, 15 Md. App. 234, 241.

> "Should the probation thus granted be revoked at a subsequent hearing for that purpose, the case

---

1. The District Court transcript contains a notarized "Certificate which reads:

> "I HEREBY CERTIFY this 17th day of September, 1974 that the foregoing transcript was typed by me as heard from the recordings provided by the District Court. Any errors or omissions are due solely to the inability of the undersigned to clearly hear said recordings."

2. The Prince George's County Inventory of property seized itemizes the personalty found in appellant's abode. For purposes of appeal we accept their being the same as those described in counts of the Montgomery County indictment. But for a typographical spelling error the victim's identification is the same.

> reverts to its status at the time the probation was granted, and determination of guilt, by plea or trial, must follow before any sentence may be imposed."

As construed by these two cases, the effect of probation without verdict is the conditional suspension of both the State's right to prosecute and the various protections afforded an accused prior to trial, *e.g.*, the presumption of innocence. This statutory hybrid provides a second chance for an accused to avoid the stigma of conviction. *State v. Jacob*, 234 Md. 452, 455.

*Bartlett* and *Duppins*, both *supra*, point out the contradiction of imposing a sentence "without finding a verdict." The Legislature has authorized the imposition of restitution by a court in such cases, C. 795, Acts of 1974, but awaited the 1975 session to meet the problem of what to do with respect to the original offense in the event of violation of the conditions of probation. Perhaps to preclude an errant probationer from simultaneously violating his probation and re-donning the cloak of presumed innocence (not to mention the necessity of the State re-shouldering the heavy burden of proof beyond a reasonable doubt, made heavier by passage of time) the Legislature recently eliminated the *de novo* trial upon violation of probation. The Legislative remedy so drastically changed the concept of Sec. 641 as to virtually eliminate probation without verdict in the orthodox sense. C. 527, Acts of 1975. We are, however, not concerned with the revised version, being restricted to the effect of Sec. 641 as it appeared prior to either the 1974 or the 1975 amendments.

Our *Bartlett* and *Duppins* opinions on the older version provide the necessary guidance. The trial judge correctly read those cases as implying "that there should be a retrial upon revocation" but erroneously extended that to mean that "there would not be a question of jeopardy." Presumably acknowledging that jeopardy attached, he was "not satisfied that it necessarily matured."

His reasoning would have been appropriate to considerations of the evidentiary rules of collateral estoppel

and res judicata since these principles are both conditioned upon an issue of ultimate fact having been once determined by a valid and final judgment. *Ashe v. Swenson,* 397 U. S. 436. However, when faced with the Fifth Amendment constitutional question of double jeopardy applied to the states through the Fourteenth Amendment by *Benton v. Maryland,* 395 U. S. 784 we are concerned with the question of whether jeopardy attached rather than if it "matured." *Cf. Blondes v. State,* 273 Md. 435. It makes no difference that the ultimate disposition of the Prince George's County charge of receiving stolen goods was conditional. The warrant was amended, a not guilty plea was entered, a finding of not guilty on a coincident assault charge was accepted in the absence of an evidentiary proffer by the State and a stipulation of facts was submitted to the court relative to the receiving charge. Preliminarily the court explained to the accused:

> "Judge: Just a moment, just a moment. Sir, we're going to proceed without witnesses being called against you, you — of that, what I'm saying?
>
> A Yes sir.
>
> Judge: And you have no right to cross examine or question any witnesses. The State is going to tell the Court what happened, do you understand the way we're proceeding?
>
> A Yes sir.
>
> Q Do you have any objections to the manner in which we're proceeding?
>
> A No I don't.
>
> Judge: Alright, counsel?"

There followed the factual recitation upon which the judge declared that the evidence convinced him of appellant's guilt beyond a reasonable doubt.

In an analagous situation considered by the Supreme Court, a juvenile was transferred from Juvenile Court to a Superior Court after an adjudicatory hearing to determine if he had violated a criminal statute. Concluding that the

subsequent trial placed him in jeopardy twice for the same offense the Supreme Court in *Breed v. Jones*, U. S.,17 Crim. L. R. 3047 held that "Jeopardy attached when respondent was 'put to trial before the trier of facts (*United States v. Jorn*, 400 U. S. 470, 479)' *ibid.*, that is, when the . . . Court, as the trier of facts, began to hear evidence. See *Serfass v. United States*, 420 U. S. at   ."

The Court went on to describe in detail what constitutes "jeopardy":

> "Jeopardy denotes risk. In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution. See *Price v. Georgia*, 398 U.S. 323, 326, 329 (1970); *Serfass v. United States*, 420 U.S. 377 (1975). Although the constitutional language, 'jeopardy of life or limb,' suggests proceedings in which only the most serious penalties can be imposed, the Clause has long been construed to mean something far broader than its literal language. See *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 170-173 (1873).

> \* \* \*

> As we have observed, the risk to which the term jeopardy refers is that traditionally associated with 'actions intended to authorize criminal punishment to vindicate public justice.' *United States ex rel. Marcus v. Hess, supra*, at 548-549. Because of its purpose and potential consequences, and the nature and resources of the State, such a proceeding imposes heavy pressures and burdens — psychological, physical, and financial — on a person charged. The purpose of the Double Jeopardy Clause is to require that he be subject to the experience only once 'for the same offence.' See *Green v. United States*, 355 U.S. 184, 187 (1957); *Price v. Georgia*, 398 U.S., at 331; *United States v. Jorn*, 400 U. S. 470, 479 (1971)."

In light of that discussion, we would be hard pressed to exempt a criminal proceeding which ends in probation without verdict from the strictures of the double jeopardy clause. Clearly it is the nature of the proceeding and not the suspension of verdict which controls.

That jeopardy attached here when the stipulated facts were submitted to the court is evident from a comparison with the facts in *Blondes*, 273 Md. at 446:

> "When the prosecution asks for a ruling on the admissibility of the chief documentary evidence against a defendant, when it begins offering other documentary evidence against the defendant, and when it offers the testimony of a witness as a necessary condition to the admissibility of such evidence, then the court has begun 'to hear the evidence.' And under the alternate test of 'swearing the first witness,' jeopardy attached when Mr. Miller took the oath."

In *Blondes*, the commencement of the trial placed the appellant in jeopardy, after which the State elected to enter a *nolle prosequi* to conclude it. Here the stipulated factual recitation had the same effect and the agreed condition of "probation without finding a verdict" suspended the State's right to prosecute[3] in the absence of a violation of the conditions of probation.

Consequently, appellant's Motion to Dismiss the Indictment should have been granted as to the Seventh and Eighth Counts of the Montgomery County Indictment for receiving the same stolen goods for which he had been once placed in jeopardy in Prince George's County. It follows logically that the Fifth and Sixth Counts charging larceny of

---

3. The prosecution was on behalf of the State — the sovereign — whether or not it was conducted in Prince George's or Montgomery County. Political subdivisions such as counties "never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions." Reynolds v. Sims, 377 U. S. 533, 575 cited in Waller v. Florida, 397 U. S. 387, 392. Thus we are not faced with responsibility for an offense against dual sovereigns as discussed in Moore v. Illinois, 55 U. S. 13 and Bell v. State, 22 Md. App. 496, 509-510.

the same items should also have been dismissed since one may not be convicted of stealing that which he has been determined to have received. *Bell v. State,* 220 Md. 75; *Heinze v. State,* 184 Md. 613, 617.

However, we affirm the denial of the Motion to Dismiss the first through fourth counts charging common law burglary, statutory nighttime housebreaking, statutory daytime housebreaking and breaking and entering. Each of these crimes has elements different from and/or in addition to the crime of receiving stolen goods for which appellant is serving his probationary period.[4] Generally, for double jeopardy to bar subsequent prosecution for other crimes arising from the transaction for which appellant had once been brought to trial, the offenses charged must be the same in law and in fact. *United States v. Ewell,* 383 U. S. 116; *Rouse v. State,* 202 Md. 481. The Court of Appeals in *Bennett v. State,* 229 Md. 208, 214 has termed that principle the *Blockburger* rule from its origin in *Blockburger v. United States,* 284 U. S. 299, 304:

> " 'Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' "

We carry coals to Newcastle by adding that elements of the crimes charged in counts one through four require proof of facts that receiving stolen goods does not.

> *Judgments affirmed in part and reversed in part.*
> *Case remanded for compliance with this opinion.*
> *Costs to be divided equally between appellant and appellee.*

---

4. We do not decide whether a different result would obtain had appellant previously been acquitted of crimes with common elements arising from the same transaction. Ashe v. Swenson, *supra,* 397 U. S. 436.