**UNITED STATES of America**

v.

**William E. HOLLEY.**

**Crim. No. K–77–0376.**

United States District Court,
D. Maryland.

Dec. 20, 1977.

Jervis S. Finney, U. S. Atty., Gale E. Rasin, Asst. U. S. Atty., Baltimore, Md., for Government.

Salvatore E. Anello, III, Arnold R. Silbiger, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

Defendant has been found guilty beyond a reasonable doubt, after a non-jury trial in this Court, of the offense of driving while his ability to do so had been impaired by his consumption of alcohol. The Court has ordered a pre-sentence report pursuant to Fed.R.Crim.P. 32(c). Presented to the Court in this case is the issue of whether this Court has the discretionary authority to stay the entering of judgment and to place the defendant on probation pursuant to 18 U.S.C. § 13 and Md.Ann.Code art. 27, § 641.

18 U.S.C. § 13, generally known as the Assimilative Crimes Act, provides:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

■ That statute "is a shorthand method of providing a set of criminal laws on federal reservations by using local law to fill the gaps in federal criminal law." *United States v. Prejean*, 494 F.2d 495, 496 (5th Cir. 1974). State law so adopted or assimilated "becomes, in effect, federal law." *United States v. Warne*, 190 F.Supp. 645, 658 (N.D. Cal.1960), *aff'd in part, vacated in part on other grounds sub nom. Paul v. United States*, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963), *cert. denied* 372 U.S. 907, 83 S.Ct. 716, 9 L.Ed.2d 716 (1963). However, as the Court also noted in *Warne* (at 658–59):

> [T]he Assimilative Crimes Act does not operate to adopt any State penal statutes which are in conflict with federal policy, as expressed by acts of Congress or by valid administrative regulations having the force of law. *Air Terminal Services Inc. v. Rentzel*, D.C.E.D.Va.1949, 81 F.Supp. 611; *Nash v. Air Terminal Services Inc.*, D.C.E.D.Va.1949, 85 F.Supp. 545; *Johnson v. Yellow Cab Co.* [321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814 (1944)].

If, therefore, we are correct in our ruling that the California milk act is in conflict with federal procurement regulations and policy within the meaning of the Public Utilities case, the penal provisions of the act were not assimilated into the installations here involved.

■ The Assimilative Crimes Act does not contemplate selective assimilation or incorporation of state criminal law. Rather, subject to the above-mentioned exception with relation to conflicts with federal policy, that statute mandates the assimilation of the entire state criminal law, relating to both offenses *and* punishments. Thus, in *United States v. Robinson*, 495 F.2d 30, 33 (4th Cir. 1974), Judge Field wrote:

> While the Administrator [of the Federal Aviation Administration] properly referred to the D.C.Code as his authority to promulgate all of the regulations in Part 159, we are at a loss to understand his purported use of the Assimilative Crimes Act of 1948 in Section 159.71. Whether he intended to incorporate the pertinent Virginia criminal statutes by the general references in the regulation or was attempting some form of "selective assimilation" under 18 U.S.C. § 13 is not at all clear. In any event, we find this novel and hybrid use of the Assimilative Act utterly improper. That Act was designed to assimilate the entire state criminal law into any appropriate federal enclave and does not contemplate selective incorporation. It operates *ex proprio vigore* and requires no authority such as Title 7, Section 1302 of the D.C.Code, for its implementation. By its terms, a person whose conduct constitutes a crime under the state law "shall be guilty of a like offense and *subject to a like punishment.*" (Emphasis added). Since the federal statute embraces both the offense and the punishment prescribed by state law the Administrator's attempt to selectively incorporate the state offenses under the Assimilative Act while substituting the reg-

ulatory penalties of Section 159.191 for those prescribed by the state legislation was without warrant. [citations omitted]

Accordingly, under the Assimilative Crimes Act, the entire Maryland criminal law becomes federal criminal law for purposes of establishing offenses and punishments relating to acts committed within Fort Meade. Therefore, if Maryland's Probation Prior To Judgment statute sets forth a "punishment" as that word is used in 18 U.S.C. § 13 and if that Maryland statute (section 641) does not conflict with any federal policy, this Court is authorized to apply probation without judgment in this case following the determination of guilt which it has already reached and stated.

In *United States v. Easley*, 387 F.Supp. 143 (N.D.Cal.1974), a defendant asked the district court "to modify his sentence by declaring the offense [*i. e.*, second degree burglary under a combination of 18 U.S.C. § 13 and a section of the California Penal Code,] of which he was convicted to be a misdemeanor." *Id.* at 143. Judge Peckham wrote (at 143–44):

Under this statute Warner would be eligible to have his offense declared to be a misdemeanor, had he committed his crime within the jurisdiction of the California state courts. The question raised by defendant's motion is whether a federal court has similar authority to make this declaration.

The Assimilative Crimes Act provides that a defendant who commits an act on a federal reservation which is illegal under the laws of the state in which the enclave is located "shall be guilty of a like offense and subject to a like punishment" under the federal law. In applying this statute, the Court of Appeals for the Seventh Circuit has held that "[t]he Act itself provides for assimilation of both offense and punishment." *United States v. Sosseur*, 181 F.2d 873, 876 (7th Cir. 1950). The Supreme Court has noted that the statute reflects the tendency toward a uniformity between the federal enclave and surrounding state territory. *See James Stewart & Co. v. Sadrakula,*

309 U.S. 94, 101, 60 S.Ct. 431, 84 L.Ed. 596 (1940).

If the punishment for Warner's offense is to be the same under federal law as it would have been under state law, this court must possess the authority granted California state courts by Cal.Penal Code § 17 to declare it to be a misdemeanor. This court holds therefore that the Assimilative Crimes Act incorporates the relevant provisions of Cal.Penal Code § 17.

Judge Peckham's reasoning is apposite and applicable herein.

Md.Ann.Code art. 27, § 641 reads as follows:

(a) *Probation after plea or finding of guilt; power of court to provide terms and conditions.*—Whenever a person accused of a crime pleads guilty or nolo contendere or is found guilty of an offense, a court exercising criminal jurisdiction, if satisfied that the best interests of the person and the welfare of the people of the State would be served thereby, and with the written consent of the person after determination of guilt or acceptance of a nolo contendere plea, may stay the entering of judgment, defer further proceedings, and place the person on probation subject to reasonable terms and conditions as appropriate. The terms and conditions may include ordering the person to make restitution, but before the court orders restitution the person is entitled to notice and a hearing to determine the amount of restitution, what payment will be required, and how payment will be made. The terms and conditions also may include, any type of rehabilitation program or clinic, including but not limited to the driving while intoxicated school, or similar program, or the parks program or voluntary hospital program.

(b) *Violation of probation.*—Upon violation of a term or condition of probation, the court may enter judgment and proceed with disposition of the person as if the person had not been placed on probation.

(c) *Fulfillment of terms of probation.* —Upon fulfillment of the terms and conditions of probation, the court shall discharge the person from probation. The discharge is final disposition of the matter. Discharge of a person under this section shall be without judgment of conviction and is not a conviction for purposes of any disqualification or disability imposed by law because of conviction of crime.

In the course of considering the question of whether the suspension of sentence and placing of the defendant on probation was final and appealable, Mr. Justice Black, writing for a unanimous Court, in *Korematsu v. United States*, 319 U.S. 432, 434–36, 63 S.Ct. 1124, 1125, 87 L.Ed. 1497 (1943), observed:

It has often been said that there can be no "final judgment" in a criminal case prior to actual sentence, *Miller v. Aderhold*, 288 U.S. 206, 210, 53 S.Ct. 325, 77 L.Ed. 702, 705; *Hill v. United States*, 298 U.S. 460, 464, 56 S.Ct. 760, 80 L.Ed. 1283, 1286, and this proposition was restated in *Berman v. United States*, 302 U.S. 211, 212,[3] 58 S.Ct. 164–166, 82 L.Ed. 204, 205.

[3] "Final judgment in a criminal case means sentence. The sentence is the judgment."

In applying this general principle to a situation like that of the instant case, the Second and Fourth Circuit Courts of Appeals have concluded that they lacked jurisdiction to hear an appeal from an order placing a defendant on probation without first imposing sentence. *United States v. Lecato*, 29 F.2d 694, 695; *Birnbaum v. United States*, 107 F.2d 885, 126 A.L.R. 1207. The Fifth Circuit appears to take the opposite view. *Nix v. United States*, 131 F.2d 857.

The "sentence is judgment" phrase has been used by this Court in dealing with cases in which the action of the trial court did not in fact subject the defendant to any form of judicial control. Thus in *Miller v. Aderhold*, supra, imposition of sentence was suspended and the defendant was put under no obligation at all. Hence the Court held that there was no jurisdiction to hear the appeal. But certainly when discipline has been imposed, the defendant is entitled to review.

In the *Berman* case, *supra*, we held that the appeal was proper where the sentence was imposed and suspended, and the defendant was placed on probation. The probationary surveillance is the same whether or not sentence is imposed. In either case, the probation order follows a finding of guilt or a plea of nolo contendere. Thereafter, the defendant must abide by the orders of the court. He must obey the terms and conditions imposed upon him, or subject himself to a possible revocation or modification of his probation; and under some circumstances he may, during the probationary period, be required to pay a fine, or make reparation to aggrieved parties, or provide for the support of persons for whom he is legally responsible. 18 USCA § 724, 7 FCA title 18, § 724. He is under the "supervision" of the probation officer whose duty it is to make reports to the court concerning his activities, 18 USCA § 727, 7 FCA title 18, § 727, and at "any time within the probation period the probation officer may arrest the probationer, wherever found, without a warrant, or the court which has granted the probation may issue a warrant for his arrest." 18 USCA § 725, 7 FCA title 18, § 725. These and other incidents of probation emphasize that a probation order is "an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline." *Cooper v. United States* (CCA 5th) 91 F.2d 195, 199.

The difference to the probationer between imposition of sentence followed by probation, as in the *Berman* case, and suspension of the imposition of sentence, as in the instant case, is one of trifling degree. Probation, like parole, "is intended to be a means of restoring offenders who are good social risks to society; to afford the unfortunate another opportunity by clemency," *Zerbst v. Kidwell*, 304 U.S. 359, 363, 58 S.Ct. 872, 82 L.Ed. 1399, 1400, 116 A.L.R. 808, and this end is served in the same fashion whether or

not probation is preceded by imposition of sentence. In either case, the liberty of an individual judicially determined to have committed an offense is abridged in the public interest. "In criminal cases, as well as civil, the judgment is final for the purpose of appeal 'when it terminates the litigation . . . on the merits' and 'leaves nothing to be done but to enforce by execution what has been determined.'" *Berman v. United States*, supra, 302 U.S. [211] 212, 213, 58 S.Ct. 164, 82 L.Ed. 204, 205. Here litigation "on the merits" of the charge against the defendant has not only ended in a determination of guilt, but it has been followed by the institution of the disciplinary measures which the court has determined to be necessary for the protection of the public.

These considerations lead us to conclude that the order is final and appealable. * * *

Mr. Justice Black's analyses are most applicable to section 641. "[T]he probation order follows a finding of guilt or a plea of nolo contendere. Thereafter, the defendant must abide by the orders of the court [as to supervision and the like] * * * or subject himself to a possible revocation or modification of his probation * * *. * * * [T]he liberty of an individual judicially determined to have committed an offense is abridged in the public interest." *Id.* 319 U.S. at 434–35, 63 S.Ct. at 1126.

In *Comm'r of Motor Vehicles v. Lee*, 254 Md. 279, 255 A.2d 44 (1968), the Court of Appeals of Maryland held that a fine could not be imposed under the probation without verdict statute as it existed at that time. In so concluding, Judge Barnes wrote (at 287–88, 255 A.2d at 47):

[T]he imposition of a fine or pecuniary penalty payable to the State may only be done by the Municipal Court if there is a "conviction" which necessarily requires a finding of guilt.

In Black's Law Dictionary (4th ed. 1951) "fine" in criminal law is defined as follows:

"A pecuniary punishment imposed by lawful tribunal upon persons *convicted* of crime or misdemeanor. * * * A pecuniary *penalty.* * * *." (Emphasis supplied)

See *Dorsey v. Petrott*, 178 Md. 230, 250, 13 A.2d 630, 640 (1940).

In 36A C.J.S. *Fines* § 1 (1961) at 431, a "fine" is defined as follows:

"A 'fine' is a sum expressly imposed in lieu of, or in addition to, a term of imprisonment, or as any part of the punishment for an offense; it is a pecuniary punishment imposed by a lawful tribunal on a person *convicted* of a crime or misdemeanor." (Emphasis supplied.)

"Penalty" is defined in 70 C.J.S. *Penalties* § 1 (1951) at 387, as follows:

"A penalty is a sum of money which the law exacts payment by way of punishment for doing some act that is prohibited or omitting to do some act that is required to be done."

Art. 66½, § 102 requires the clerks of the various courts throughout the State to "forward to the Department [of Motor Vehicles] a record of the *conviction* of any person in said court" (emphasis supplied) for the violation of the motor vehicle laws. Pursuant to § 102, the records of the proceedings against Lee in the Municipal Court were forwarded to the Department as a case in which there had been a "conviction," doubtless because there was a fine imposed and apparently paid by Mr. Lee.

The Attorney General stated in the brief for the Commissioner, without contradiction, that at least two *nisi prius* courts have held that a fine could not be imposed as a condition of probation without verdict, citing the late Judge Edwin Harlan of the Supreme Bench of Baltimore City in *State v. Palmer* (Ind. 780Y/1963) and Judge Raine of the Circuit Court for Baltimore County who stated on September 21, 1966, "It is a legal bastard. It is sort of evading the issue. * * * No one has ever heard of a probation before verdict being followed by a jail sentence. That's a punitive measure and so's a fine. Both of these

penalties can only be applied with a verdict."

It is important to observe, also, that the then Attorney General, Thomas B. Finan, now a judge of this Court, at the request of the then Chief Judge of the Municipal Court of Baltimore City, T. Barton Harrington, advised Chief Judge Harrington on May 11, 1964 (see 49 Opinions of the Attorney General 129 (1964)) that no "monetary charge, sometimes described as a 'fine,' sometimes as a 'condition of probation'" other than court costs, could be imposed upon an accused granted probation without verdict.

It is our opinion that a monetary fine, penalty or charge payable to the State may only be imposed upon an accused if there is a finding of guilt, either after a trial on the merits or upon valid pleas of guilty or *nolo contendere*. Such an imposition is inconsistent with the granting of probation without finding a verdict. This does not mean, however, that the payment of money by way of *restitution* may not, in proper cases, be imposed as a condition of probation without finding a verdict. Such a requirement is to be distinguished from a fine or penalty payable to the State as *punishment* for the commission of a crime, and is in the nature of reparations or redress to make whole, persons who have been injured by the accused's conduct. As such, it is not punitive, and is not, like a fine, consistent only with a criminal conviction.

*Lee* does not, as the government suggests, control the resolution of the question before this Court. In the first place, it should be noted that the issue in question is one of federal, not state law. *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 391, 64 S.Ct. 622, 88 L.Ed. 814 (1944). In the second place, section 641 has been substantially amended since the *Lee* decision. In its present form, that statute provides for probation without judgment, instead of, as formerly, providing for probation without a verdict. The amended version also requires a prior "determination of guilt or acceptance of a nolo contendere plea," which was not required by the former statute if the defendant consented in writing to probation without verdict. Additionally, whereas under the former version a de novo trial was necessary if the defendant violated his probation, the amended version permits the court, in the event of a probation violation, to "enter judgment and proceed with disposition of the person as if the person had not been placed on probation." The elimination in the present law of the right to a de novo trial after violation of probation and also the elimination of a defendant's right belatedly to assert his innocence substantially alters the concept of section 641. In *Stevens v. State*, 27 Md.App. 460, 340 A.2d 717 (1975), the Court of Special Appeals of Maryland discussed the former and the amended versions of the Maryland statute. In so doing, Judge Lowe commented (at 463, 340 A.2d at 719) as follows concerning that Court's own construction of that law in two earlier cases:

> As construed by these two cases, the effect of probation without verdict is the conditional suspension of both the State's right to prosecute and the various protections afforded an accused prior to trial, *e. g.*, the presumption of innocence. This statutory hybrid provides a second chance for an accused to avoid the stigma of conviction. *State v. Jacob*, 234 Md. 452, 455, 199 A.2d 803.
>
> *Bartlett* [*v. State*, 15 Md.App. 234, 289 A.2d 843] and *Duppins* [*v. State*, 17 Md. App. 464, 302 A.2d 717], both *supra*, point out the contradiction of imposing a sentence "without finding a verdict." The Legislature has authorized the imposition of restitution by a court in such cases, C. 795, Acts of 1974, but awaited the 1975 session to meet the problem of what to do with respect to the original offense in the event of violation of the conditions of probation. Perhaps to preclude an errant probationer from simultaneously violating his probation and re-donning the cloak of presumed innocence (not to mention the necessity of the State re-shouldering the heavy burden of proof beyond a reasonable doubt, made heavier by passage of time) the Legislature recently

eliminated the *de novo* trial upon violation of probation. The Legislative remedy so drastically changed the concept of Sec. 641 as to virtually eliminate probation without verdict in the orthodox sense. C. 527, Acts of 1975. We are, however, not concerned with the revised version, being restricted to the effect of Sec. 641 as it appeared prior to either the 1974 or the 1975 amendments.

The Government argues that the sole purpose of the Assimilative Crimes Act is to fill gaps resulting from Congress' failure to enact individual criminal provisions, that 18 U.S.C. § 3651 and Rules 32(b) and (e) of the Federal Rules of Criminal Procedure provide that probation may be granted after judgment, and that no gap exists to be filled by assimilation of section 641.

18 U.S.C. § 13 is made specifically applicable, by its own terms, when the "act or omission" in question has not been "made punishable by any enactment of Congress." There is no question that the act of which defendant has been convicted, *i. e.*, driving while his ability was impaired by consumption of alcohol, is one "not made punishable by any enactment of Congress." *See United States v. Walker*, 552 F.2d 566, 568 (4th Cir. 1977), involving a conviction for drunken driving on the federal reservation at Fort Belvoir under the Assimilative Crimes Act and a Virginia statute. Herein, the interaction of state and federal sentencing provisions in the light of the language of the federal Assimilative Crimes Act requires careful analysis. That interaction was dealt with in *United States v. Dunn*, 545 F.2d 1281 (10th Cir. 1976). In that case, the Tenth Circuit declined to hold that either state or federal provisions supersede the other, but rather reconciled them in a way intended to maximize the sentencing options available to the trial court. In so concluding, Chief Judge Lewis wrote (at 1282–83):

> Appellant, Larry Dunn, pleaded guilty to a misdemeanor charge of theft at the Fort Carson Army Base under the Assimilative Crimes Act, 18 U.S.C. § 13. The incorporated state provisions were Colo.

Rev.Stat.Ann. § 18–4–401, *as amended*, (Cum.Supp.1975), and Colo.Rev.Stat.Ann. § 18–1–106 (1973). Initially, the district court committed appellant to the custody of the Attorney General for 60 days for observation and study pursuant to the Youth Corrections Act, 18 U.S.C. § 5010(e). After completion of the observation period, appellant was sentenced under the Youth Corrections Act, 18 U.S.C. §§ 5010(b) and 5017(c), which provides for an indeterminate term of confinement up to four years and of conditional supervision up to six years. The incorporated Colorado sentencing statute, Colo.Rev.Stat.Ann. § 18–1–106, provides for a maximum imprisonment of twelve months and has no indeterminate sentencing provision.

Appellant appeals his sentence, contending it is illegal because he now stands sentenced to an indeterminate term of confinement up to four years which is beyond the twelve-month maximum provided under Colorado law.

\* \* \* Since the Assimilative Crimes Act provides that a defendant convicted under it shall be "subject to a like punishment" as if he had been convicted under the incorporated state statute, appellant argues that the district court erred in imposing an indeterminate sentence of confinement up to four years under the Youth Corrections Act.

The government with equal ardor relies upon the language of the Youth Corrections Act, 18 U.S.C. § 5010(b):

> If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in *lieu of the penalty of imprisonment otherwise provided by law*, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter. . . .

(Emphasis added.) The government contends that the phrase "in lieu of the

penalty of imprisonment" has some meaning and the inescapable conclusion is that the district court is granted the power to replace the penalty normally provided by law with the provisions of the Youth Corrections Act.

The problem is one of construing two statutes, neither enacted in any obvious contemplation of the other but each bearing upon the other when both are involved in the factual situation presented. In such circumstances we should seek a solution which avoids violence to the terms of either but which brings both into correlation, since to construe either in isolation from the other would thwart the intention of Congress.

The Supreme Court has aptly described the purpose of the Assimilative Crimes Act as a method of punishing a crime committed on government reservations "only in the way and to the extent that it would have been punishable if the territory embraced by the reservation remained subject to the jurisdiction of the state." *United States v. Press Publishing Co.*, 219 U.S. 1, 10, 31 S.Ct. 212, 214, 55 L.Ed. 65. The purpose of the sentencing provision of the Youth Corrections Act is "to permit federal judges in their discretion to provide . . . sentences . . . for treatment of youth offenders in line with modern trends in penology which stress correctional rehabilitation rather than retributive punishment." *United States v. Vaught*, W.D.Mo., 355 F.Supp. 1348, 1350.

There is one solution which effectuates these two statutes without thwarting the intention of Congress. The Assimilative Crimes Act prohibits the district court from sentencing appellant to a term of imprisonment longer than the twelve-month maximum provided by the Colorado statute. Thus, the district court erred in sentencing appellant to an indeterminate period of confinement up to four years. However, the district court, in its discretion, may determine that the correctional rehabilitation provided for under the Youth Corrections Act would be more advantageous to appellant and soci-

ety-at-large than retributive punishment. If that is the determination of the district court, then the district court may apply the provisions of the Youth Corrections Act to appellant with the stipulation that the maximum term of appellant's confinement cannot exceed the maximum term of imprisonment provided for by the applicable Colorado sentencing statute.

In this manner the two statutes are harmonized. It accords on the one hand with the intent expressed by the "in lieu" provision of the Youth Corrections Act, and on the other it does no violence to the "like punishment" provision of the Assimilative Crimes Act. Our interpretation gives effect to the reality of the situation and gives maximum comfort to the basic intent of Congress as contained in the cited statutes.

Section 641 can similarly be reconciled with 18 U.S.C. § 3651 and Fed.R.Crim.P. 32. None of the provisions, language, intent or purpose of either that statute or that rule are violated by so doing. The Government suggests that a policy against probation before judgment is expressed in 18 U.S.C. § 3651 and in Fed.R.Crim.P. 32(b) and (e). This suggestion seems to be based on inferences from negative pregnants in those provisions.

18 U.S.C. § 3651 provides, in pertinent part:

> § 3651. *Suspension of sentence and probation.*
>
> *Upon entering a judgment of conviction* of any offense not punishable by death or life imprisonment, *any court having jurisdiction* to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, *may suspend the imposition or execution of sentence and place the defendant on probation* for such period and upon such terms and conditions as the court deems best. [Emphases added.]

That provision in section 3651 does not forbid the judge to impose probation under all other circumstances. Prior to the adoption

of the federal probation statute, federal trial courts had no power to grant probation. That was so because "the authority to define and fix the punishment for crime is legislative" and not judicial. *Ex parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916). Accordingly, the separation of powers doctrine required that the Congress first act to grant power to a federal trial court to suspend sentence and to provide for probation. However, once the Congress so acted, as Judge Dobie has observed in *Mann v. United States*, 218 F.2d 936, 940 (4th Cir. 1955), "the Probation Statute is a humanitarian piece of legislation and should, accordingly, be liberally interpreted by the courts."

The negative inferences to be drawn from Rule 32 are even weaker than those which the Government suggests with respect to section 3651. Rule 32(b)(1) provides:

A judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence. If the defendant is found not guilty or for any other reason is entitled to be discharged, judgment shall be entered accordingly. The judgment shall be signed by the judge and entered by the clerk.

That rule says nothing about the timing or the necessity of a judgment of conviction. Rule 32(e) simply states:

After conviction of an offense not punishable by death or by life imprisonment, the defendant may be placed on probation if permitted by law.

The effect of Rule 32(e) is to incorporate "by reference the statutory provisions on probation." 2 C. Wright, Federal Practice & Procedure, Criminal § 529, at 432 (1969). As stated *supra*, section 3651 does not indicate any general federal policy against probation before judgment. Nor does the fact that the Congress, in enacting 21 U.S.C. § 844, provided for probation without judgment for first offenders who are found guilty of or plead guilty to possession of narcotics or the like, indicate that the Congress meant to prohibit probation without judgment as a "punishment" under a combination of the Assimilative Crimes Act and a state statute such as Maryland's section 641. The same can be said of the provisions of the Federal Youth Corrections Act, 18 U.S.C. §§ 5001–5042, including those set forth in 18 U.S.C. § 5021 providing for a certificate setting aside a youth offender's conviction.

All in all, 18 U.S.C. § 13 and Maryland's section 641 mesh easily and sensibly. Accordingly, this Court holds that it has the discretionary authority in this case, at the time of sentencing, to utilize section 641's probation-before-judgment procedure if this Court deems the same appropriate.

### Addendum

Since the within opinion was prepared, this Court has noted the opinion of the Court of Appeals of Maryland in *Warren v. State*, 281 Md. 179, 377 A.2d 1169 (1977). In that case, the Court held that a stay-of-judgment order pursuant to Md.Ann.Code art. 27, § 292(b), relating to first offenders who plead guilty or are found guilty of certain types of drug offenses, was not appealable because the Maryland legislature had not made such an order appealable. In so doing, Judge Levine wrote (at 181 n.1):

An order for probation under Art. 27, § 641, which has general application, is similar to an order under § 292 in that the court "stay[s] the entering of judgment, defer[s] further proceedings, and place[s] the person on probation subject to reasonable terms," Like § 292, § 641 provides for discharge of the accused after probation, but unlike § 292, § 641 does not provide for dismissal upon successful completion of probation. Nor does § 641 provide for automatic expungement. The views we express here are, of course, limited to § 292.

In his sole dissent to Judge Levine's majority opinion, Judge Eldridge (at 189, 377 A.2d at 1175) began as follows:

As a result of the trial court's proceedings in the instant case, the guilt of the defendants has been determined, and they have been subjected to a probation order, described by the Supreme Court as

**1370**

"an authorized mode of mild and ambulatory *punishment*, the probation intended as a reforming *discipline*." (Emphasis supplied.) *Korematsu v. United States*, 319 U.S. 432, 435, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943).

The defendants desire appellate review of the proceedings which led to the imposition of this probation order, but the majority concludes that the rights of the defendants are not sufficiently "settled" to give the judgment the finality requisite for the purposes of appeal. The majority relies on the fact that *after* the defendants have undergone the punishment and discipline of the probation order for the required period of time, the proceedings against them will be dismissed without a "judgment of conviction," and on the fact that a violation of the terms of the order may result in an entry of a "judgment of conviction" and the imposition of still harsher penalties.

I fail to understand how these subsequent events to which the majority refers change the posture of this case with regard to the bringing of an appeal. Guilt has been determined and discipline imposed. To fasten upon the fact that the proceedings will be dismissed upon what the majority euphemistically refers to as "successful completion of probation" ignores the reality that the probation order itself restricts freedom and imposes discipline, and that "when discipline has been imposed, the defendant is entitled to review." *Korematsu v. United States, supra*, 319 U.S. at 434, 63 S.Ct. 1124. [Emphases in original.]

Judge Eldridge concluded (at 194, 377 A.2d 1169) that he did not agree with the view of the majority in *Warren* that the Maryland General Assembly had intended to make unappealable a section 292(b) order. Nothing in the majority or dissenting opinions in *Warren* suggests that the word "punishment" as it is used in 18 U.S.C. § 13 should be construed other than as in this Court's within opinion.