UNITED STATES of America

v.

Jerry SMITH.

UNITED STATES of America

v.

James K. MARIEA.

Criminal Nos. 85–00019 P, 85–00020 P.

United States District Court,
D. Maine.

July 30, 1985.

William H. Browder, Jr., Asst. U.S. Atty., Portland, Me., for U.S.

Joseph Field, Brunswick, Me., for both Mariea and Smith.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Defendant James Mariea, a member of the armed forces stationed at the United States Naval Air Station in Brunswick, Maine, is charged with three offenses, defined under the law of the State of Maine, alleged to have been committed within the federal enclave of the United States Naval Air Station. These charges are: (1) operating a motor vehicle under the influence of intoxicating liquor, under 29 M.R.S.A. § 1312–B; (2) eluding police, under 29 M.R.S.A. § 2501–A(3); and (3) leaving the scene of an accident, under 29 M.R.S.A. § 894. The charges are brought against him in the United States District Court on the Government's theory that the state criminal statutes are made applicable to him under the Assimilative Crimes Act (ACA), 18 U.S.C. § 13. The Defendant demanded a jury trial and subsequently filed, on April 22, 1985, a motion to dismiss the pending charges against him.

Defendant Jerry Smith, a member of the armed forces stationed at the United States Naval Air Station in Brunswick, Maine, is charged with operating a motor vehicle under the influence of intoxicating liquor under 29 M.R.S.A. § 1312–B pursuant to the ACA. Like Defendant Mariea, Defendant Smith demanded a jury trial and subsequently filed a Motion to Dismiss the charge.

Because the preliminary issues raised in the two Motions to Dismiss are identical, the Court has, without objection, consolidated the cases for hearing and decision on the motion.

Defendants raise three grounds for dismissal. Two of those grounds have no merit.[1] Their third argument merits closer

---

1. Defendants first argue that the Complaints are defective because they fail to comply with Fed. R.Crim.P. 7(a) and (c). Any defects have been cured by the Government's filing of Informations, procedurally acceptable to the Defendants, against each Defendant.

 Defendants also argue that the ACA does not assimilate state civil violations, but only criminal violations. All of the charges brought in these cases are denominated criminal offenses under state law and, therefore, Defendants' argument is unavailing. *See* 29 M.R.S.A. § 1312–B and *State v. Freeman,* 487 A.2d 1175 (Me.1985); 29 M.R.S.A. § 894; 29 M.R.S.A. § 2501–A(3).

analysis. They argue that the charges brought against them are punishable under the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 801, *et seq.*, and that the provisions of the UCMJ are "enactments of Congress" within the meaning of the ACA which preclude assimilation of state statutes punishing conduct punishable under the UCMJ.

The issue is simple: whether the federal Assimilative Crimes Act assimilates state statutes punishing conduct which is also punishable under the Uniform Code of Military Justice. The Assimilative Crimes Act provides:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, *although not made punishable by any enactment of Congress,* would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13. Thus, the crimes charged here are punishable under state law, made federal law by the ACA, unless they are made punishable "by any enactment of Congress."

The Uniform Code of Military Justice is an enactment of Congress. *See* 10 U.S.C. § 801, *et seq.* The Court of Appeals for the Fourth Circuit has held, however, that it is not an "enactment of Congress" within the meaning of the Assimilative Crimes Act. *United States v. Walker,* 552 F.2d 566 (4th Cir.1977). In *Walker,* the defendant was a member of the armed forces who was convicted of drunk driving within a military reservation in Virginia. His conviction was based on a Virginia state law, applied pursuant to 18 U.S.C. § 13, *supra,* and took place in the United States District Court. The defendant argued that he could not be charged under the state law because drunken driving was punishable under Article 111 of the Uniform Code of Military Justice, 10 U.S.C. § 911, a congressional enactment.

The Fourth Circuit, in a footnote, rejected the defendant's argument for three reasons. 552 F.2d at 568, n. 3. The Court stated that the defendant's construction of the ACA would produce a result inconsistent, first, with "well-established doctrine ... that district courts have at least concurrent jurisdiction with military courts over offenses committed by military personnel," and, second, "with the modern trend toward trying military personnel before district courts where the offense is essentially civilian in nature." *Id.* Third, the Court stated that the defendant's construction of the ACA would mean that civilians and military personnel would receive disparate treatment for precisely the same conduct on a military reservation. Because the Court did not "believe that Congress intended ... these anomalies," the Court construed "any enactment of Congress" as used in 18 U.S.C. § 13 to mean only enactments "of general applicability." Since the UCMJ normally applies only to military personnel, it is not an enactment of general applicability.

The Government urges this Court to adopt the construction of 18 U.S.C. § 13 set forth in *Walker.* The Fourth Circuit's decision does not bind this Court, and the Defendants argue that the *Walker* court's briefly-stated rationale is incorrect and should be rejected. The Court is persuaded that a more thorough exploration of the meaning of the Assimilative Crimes Act is justified.

 The starting point for statutory interpretation is the language of the statute itself. *See Ciampi v. Secretary of Health and Human Services, Inc.,* 687 F.2d 518, 524 (1st Cir.1982); *Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp.,* 545 F.2d 754 (1st Cir.1976). If the language is plain, courts should enforce it according to its terms, unless adherence to the language would lead to an absurd result or one at variance with the policy of the statute. *Massachu-*

*setts Financial Services,* 545 F.2d at 756. The First Circuit explained:

A basic principle which must guide our approach to the instant case is that a statute's plain language is the primary indicator of its meaning:

It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms. *Caminetti v. United States,* 242 U.S. 470, 485 [37 S.Ct. 192, 194, 61 L.Ed. 442] ... (1917).

Of course, deference to the plain meaning rule should not be unthinking or blind. We would go beyond the plain meaning of statutory language when adherence to it would produce an absurd result or "an unreasonable one 'plainly at variance with the policy of the legislation as a whole.' "

*Id.* (citations omitted). It is undisputed that the Uniform Code of Military Justice is an enactment of Congress, within the plain meaning of the phrase. Thus, it appears that the UCMJ is included within the plain language which excepts conduct punishable by "any enactment of Congress" from the operation of the federal Assimilative Crimes Act.

The Fourth Circuit in *Walker* found reason to narrow the reach of the plain language, "any enactment of Congress," to Congressional enactments "of general applicability." This Court is not persuaded by *Walker* that there exist "anomalies" that justify departure from the plain language of this Act, particularly in light of the clear purpose of the Act. The Court will address the anomalies listed by the Fourth Circuit in *Walker.*

Contrary to the *Walker* court's assertion, a broader construction of the phrase, "any enactment of Congress," is not inconsistent with the doctrine that, under 18 U.S.C. § 3231, district courts have concurrent jurisdiction with military courts over offenses committed by military personnel. Section 3231 of Title 18 simply provides that district courts have original jurisdiction "of all offenses against the laws of the United States." The jurisdictional question is whether there has been an offense against the "laws of the United States" within the meaning of 18 U.S.C. § 3231. The question in this case—whether a particular state law is assimilated by the Assimilative Crimes Act—is entirely distinct, and its resolution is not logically dependent upon the issue of concurrent jurisdiction.

The Fourth Circuit in *Walker* also notes "the modern trend toward trying military personnel before district courts where the offense involved is essentially civilian in nature." 556 F.2d at 568, n. 3. Again, the question here is whether there is an *offense* charged under the Assimilative Crimes Act. Assuming that there is a policy favoring trial of military personnel in civil courts, such trial can only be of offenses cognizable in a federal court. The Maine OUI statute is only cognizable as defining a federal criminal offense for purposes of prosecution in a federal court if the offense defined by the state law is assimilated by the Assimilative Crimes Act. The policy alluded to in *Walker* cannot afford the grounds for transmutation of a state offense into a federal offense; that can only be done by application of the language and purpose of the Assimilative Crimes Act.

Finally, the Court in *Walker* was concerned that civilians on military reservations would be subject to a different law than military personnel for precisely the same conduct. This would be true in any instance in which the UCMJ happens to overlap the criminal law in the state where a military reservation is located. Disparate treatment of civilians and soldiers is a manifest premise of the UCMJ; its existence and its content demonstrate a congressional purpose to give particularized treatment to military personnel for certain conduct identified by Congress. Disparate treatment may result any time a person in the military is charged under the UCMJ for conduct also punishable under state law.

In essence, the Fourth Circuit's rationale in *Walker* would mean that the offenses made specifically punishable by the UCMJ are impliedly repealed by the more general Assimilative Crimes Act.

■ The purpose of the Assimilative Crimes Act is to fill gaps "where no action of Congress has been taken to define the missing offenses." *Williams v. United States,* 327 U.S. 711, 719, 66 S.Ct. 778, 782, 90 L.Ed. 962 (1946); *United States v. Marcyes,* 557 F.2d 1361, 1364 (9th Cir.1977). The ACA does not apply where another federal statute makes criminal the same conduct condemned under state law. *United States v. Best,* 573 F.2d 1095, 1098 (9th Cir.1978); *United States v. Patmore,* 475 F.2d 752, 753 (10th Cir.1972). It is with reference to the fundamental purpose of the ACA to fill gaps in the federal law that the language of the Act must be construed. Where there is no gap to be filled, the ACA does not apply.

The reasons given by the Fourth Circuit in *Walker* for departing from the plain meaning and the purpose of the ACA do not withstand analysis. *See, supra.* Neither *Walker* nor any of the cases cited by the parties or found by the Court during its own research address the critical question as to why Congress would elect to enact duplicative punishments for the same conduct committed by members of the armed forces. The Fourth Circuit in *Walker,* in essence, purportedly found a congressional preference for punishment of drunk driving by military personnel under state law as applied by the ACA over punishment under the specific UCMJ provision barring drunk driving. Since drunk driving is illegal in every state, the construction adopted by *Walker* would render Article 111 of the UCMJ nugatory, at least with respect to offenses committed on military reservations in the United States. The Court must presume that Congress had a rational basis for enacting Article 111 of the UCMJ, and that Congress found that military interests required that the UCMJ single out drunk driving and certain other offenses also generally punishable under state law for punishment under military law. Otherwise, such UCMJ provisions would be rendered meaningless.

■ Because Congress has enacted a specific provision forbidding drunk driving by servicemen, there is no gap to be filled by the Assimilative Crimes Act. No reason has been advanced, nor can one be found, why Congress would have intended that conduct by servicemen which it has specifically proscribed under the UCMJ should also be punishable under the general mandate of the ACA. Such a construction is inconsistent with the plain meaning of the ACA and its purpose to fill gaps in federal criminal law. Accordingly, "any enactment of Congress" must be construed to include the provisions of the Uniform Code of Military Justice.

This construction is consistent with the view expressed by the Court of Appeals for the Eighth Circuit in *United States v. Butler,* 541 F.2d 730 (8th Cir.1976). Interestingly, the District Court in *Butler* had construed the phrase, "any enactment of congress," as used in the ACA, as being limited to laws applicable only to federal enclaves. This construction is virtually the polar opposite of that espoused in *Walker, supra.* The Court of Appeals vacated the District Court's decision, refusing to accept such a narrow construction of the ACA. *Butler,* 541 F.2d at 733. The court determined that "any enactment" includes federal laws of general applicability. The court relied on the plain meaning, history and purpose of the Act. First, the meaning of the term *"any* enactment" (emphasis added) is clear. *Id.* Second, the history of the Act supports a broad construction of the phrase, "any enactment." *Id.* Finally, with respect to purpose, the court noted:

> The legislative history of the ACA demonstrates that its purpose was not to equalize, but to fill the voids in the criminal law applicable to federal enclaves created by the failure of Congress to pass specific criminal statutes.

*Id.* at 733–74. Thus, the court rejected the view that one purpose of the ACA is to provide equal treatment for all persons,

civilian and military, on federal enclaves. *Compare Walker, supra,* 552 F.2d at 568, n. 3.

Finally, this Court assigns no weight in the decision of this case to two decisions that cite *Walker* for the proposition that drunk driving is not made punishable by any enactment of Congress. *See United States v. Best,* 573 F.2d 1095, 1098 (9th Cir.1978); *United States v. Holley,* 444 F.Supp. 1361, 1367 (D.Md.1977). In neither *Holley* nor *Best* did the opinions indicate that the defendants were members of the military to whom the Uniform Code of Military Justice was applicable. Thus, these decisions are inapposite.

The Government has cited two regulatory schemes which purport to apply state traffic laws to civilians and military personnel on federal military installations. Operation of the Navy Instruction (OPNA-VINST) 11200.5B, ch. 4, § 4–3 directs all installation commanders to establish vehicle codes applicable to the operation of motor vehicles on their installations. Pursuant to OPNAVINST 11200.5B, the commanding officer at Brunswick Naval Air Station issued Naval Air Station Brunswick Instruction (NASBINST) 5560.9G, which incorporates all of the vehicular traffic laws of the State of Maine. The only penalties provided for in NASBINST 5560.9G are imposition of "traffic points" and suspension of operators' permits. NASBINST 5560.9G, Enclosure 5, §§ (2), (3) and (5). The offenses are adjudicated by "Traffic Hearing" at the security office of the air station under NASBINST 5560.9G, Enclosure 5, § 1.

In addition, Department of Defense Regulations, 32 C.F.R. § 210.1, *et seq.,* provide that state vehicular laws be adopted and made applicable on military installations. 32 C.F.R. § 210.2(b). The penalty for any violation is a fine of not more than fifty dollars or imprisonment for not more than thirty days, or both. *Id.* § 210.3(c).

■ The Informations filed in these cases charge only violations of 18 U.S.C. § 13 (the ACA) and the appropriate state statute. No violations of either of the above regulatory schemes have been alleged. No issues as to the appropriate procedures for enforcing the regulations discussed above or as to this Court's jurisdiction to hear such matters are before this Court. Nor have the parties raised any question as to whether these regulatory schemes provide a more appropriate forum for adjudication of these matters than this Court. The Court has determined that the ACA does not assimilate, as against military personnel subject to the provisions of the UCMJ, state statutes punishing offenses that are enumerated in the UCMJ. Accordingly, all counts charging violations of such state statutes under authority of the ACA must be dismissed.

■ The Government does not dispute that operating under the influence, *see* 29 M.R.S.A. § 1312–B, is an "act or omission" punishable under Article 111 of the UCMJ. Defendant Smith has been charged only with operating under the influence. Accordingly, the Information filed against him must be dismissed. In addition, Count I of the Information filed against Defendant Mariea must be dismissed.

■ Defendant Mariea also has been charged in Count II with leaving the scene of an accident under 29 M.R.S.A. § 894 and the ACA. No provision of the Uniform Code of Military Justice or any other enactment of Congress specifically punishes such conduct. Accordingly, 29 M.R.S.A. § 894 is properly assimilated under the ACA, and Defendant Mariea's Motion to Dismiss must be denied as to Count II.

Defendant Mariea has been charged in Count III of the Information with attempting to elude a law enforcement officer by driving at a reckless rate of speed which resulted in a high-speed chase under 29 M.R.S.A. § 2501–A(3) and the ACA. The Government states that this offense is "analogous" to Article 95 of the UCMJ, 10 U.S.C. § 895, which provides:

Any person subject to this chapter who resists apprehension or breaks arrest or who escapes from custody or confine-

ment shall be punished as a court-martial may direct.

Courts have taken differing approaches to the question of whether a particular act or omission punishable under state law is the same act or omission punishable under a particular federal statute. The more restrictive approach holds that the ACA may be applied as long as the "precise act" punishable under state law is not proscribed by federal law. *See, e.g., United States v. Brown,* 608 F.2d 551, 554 (5th Cir.1980); *Fields v. United States,* 438 F.2d 205 (2d Cir.1971). A less restrictive approach characterizes the issue as being whether the "generic acts" punishable under state law are punishable by an enactment of Congress. *See United States v. Butler,* 541 F.2d 730 (8th Cir.1976). The Court in *Butler* explained:

> The test is not whether the same elements of proof are contained in both state and federal statutes, but whether the acts of the defendant are made punishable under any enactment of Congress. As *Williams [v. United States,* 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946)]* makes clear, "acts" under the ACA does not refer to "individual acts of the parties" but, rather, in a "generic sense" to acts of a general type or kind which are prohibited.

*Id.* at 737.

■ Without deciding between the two approaches, the Court finds that even under the *Butler* analysis the Government is not precluded from charging Defendant Mariea with a violation of 29 M.R.S.A. § 2501–A(3) under the authority of the ACA. The act punishable under Article 95 of the UCMJ is resisting apprehension or breaking arrest. The act punishable under 29 M.R.S.A. § 2501–A(3) is attempting to elude an officer *by driving at a reckless rate of speed which results in a high-speed chase.* While the attempt to elude may arguably be the same "generic act" as resisting apprehension, the additional elements of the state statute proscribe a very different kind of conduct, implicating different interests of society, than that punishable under Article 95 of the UCMJ. Therefore, 29 M.R.S.A. § 2501–A(3) is assimilable under the ACA, and the Motion to Dismiss must be denied as to Count III.

Defendants make a further argument as to why *all* the pending charges should properly be brought before a court-martial under the UCMJ. Article 134 of the UCMJ, 10 U.S.C. § 934 makes punishable in a court-martial "all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed services, and crimes and offenses not capital," though not specifically mentioned in the UCMJ. 10 U.S.C. § 934. The Manual for Courts-Martial, United States, 1984, promulgated by Executive Order 12473 (Aug. 1, 1984), contains an explanation and elucidation of Article 134. The Manual purports to bring within the scope of Article 134 all conduct not specifically punishable under the UCMJ but punishable under state law by means of the ACA. *See* Manual, Part IV, ¶ 60(c)(4)(c)(ii). Such crimes would be punishable in a court-martial. *Id.* Defendants argue that because the state offenses to which the ACA applies are incorporated in Article 134 of the UCMJ by the Manual, such offenses should only be tried in a court-martial.

■ This Court disagrees. The mere fact that the UCMJ has incorporated, by executive interpretation, all offenses punishable under the ACA does not divest this Court of jurisdiction to try charges properly brought before it under the ACA. The ACA is a federal statute, and this Court has jurisdiction to try offenses properly chargeable under the ACA by virtue of 18 U.S.C. § 3231.[2]

Accordingly, it is ORDERED:

---

**2.** If Defendants intend to argue that Article 134 of the UCMJ precludes application of state law through the ACA because it purports, by executive interpretation, to punish all conduct punishable under state law, the Court rejects the argument. Unlike Article 111 and other provisions of the UCMJ, Article 134 is a general provision. Something more specific than the broadly com-

(1) that the Information filed against Defendant Jerry Smith be, and is hereby, DISMISSED;

(2) that Court I of the Information filed against Defendant James K. Mariea be, and is hereby, DISMISSED;

(3) that Defendant James K. Mariea's Motion to Dismiss Counts II and III of the Information be, and is hereby, DENIED.

So ORDERED.

prehensive language of Article 134 is required to demonstrate a congressional intent that the ACA should not apply because of the existence of an enactment of Congress that punishes the same conduct.