UNITED STATES of America, Plaintiff,

v.

Robert T. FULKERSON, Defendant.

UNITED STATES of America, Plaintiff,

v.

Edgar A. DUTY, Defendant.

UNITED STATES of America, Plaintiff,

v.

Steven R. TEAGLE, Defendant.

Crim. Nos. 85–02046, 85–01993 and 85–01984.

United States District Court, D. Hawaii.

March 24, 1986.

Edwin S. Castle, Sp. Asst. U.S. Atty., Daniel A. Bent, Honolulu, Hawaii, for plaintiff.

Hayden Aluli, Asst. Federal Public Defender, Michael R. Levine, Federal Public Defender, Honolulu, Hawaii, for defendant.

## ORDER AFFIRMING MAGISTRATE'S DECISION

SAMUEL P. KING, Senior District Judge.

Defendants are active-duty soldiers who were apprehended for driving under the influence of intoxicating liquor while on military installations in Hawaii. They have been charged under Hawaii Revised Statutes §§ 291–4(a)(1) and 291–4(a)(2), which make it unlawful to assume control of a vehicle while under the influence of alcohol or while having a blood-alcohol content, by weight, of more than 0.10 percent.

The issue on appeal is whether these crimes, as applied to active-duty soldiers, are made federal offenses by the Assimilative Crimes Act, 18 U.S.C. § 13. The magistrate determined that they are and therefore denied the defendants' motion to dismiss the charges. The court finds that the magistrate's determination was correct. Accordingly, the order appealed from is affirmed.

The Assimilative Crimes Act ["ACA"], 18 U.S.C. § 13, provides:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, *although not made punishable by any enactment of Congress*, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

(emphasis added).

In enacting the ACA, Congress intended "to apply the principle of conformity to state criminal laws in punishing most minor offenses committed within federal enclaves." *United States v. Sharpnack*, 355 U.S. 286, 291, 78 S.Ct. 291, 295, 2 L.Ed.2d 282 (1958). In short, the Act fills the gaps in the criminal law applicable to federal enclaves in instances where Con-

gress has failed to pass specific criminal legislation. *United States v. Best,* 573 F.2d 1095, 1098 (9th Cir.1978); *United States v. Marcyes,* 557 F.2d 1361, 1364 (9th Cir.1977). The Act does not apply "where another federal statute makes criminal the same conduct condemned under state law." *Best, supra,* at 1098.

With respect to certain major offenses, Congress has seen fit to enact specific legislation for federal enclaves, thereby precluding the application of state criminal laws to offenses so defined. *See, e.g.,* 18 U.S.C. § 1111 (murder); 18 U.S.C. § 2031 (rape); 18 U.S.C. § 2111 (robbery); *see also Sharpnack, supra,* 355 U.S. at 289 & n. 5, 78 S.Ct. at 293 & n. 5. The Federal Criminal Code does not, however, contain any specific prohibition against drunk driving on a federal enclave.

■ Nevertheless, as active-duty soldiers, defendants are subject to the Uniform Code of Military Justice ["UCMJ"], 10 U.S.C. § 801 *et seq.* Article 111, UCMJ, provides that "Any person subject to this chapter who operates any vehicle while drunk, or in a reckless or wanton manner, shall be punished as a court-martial may direct." 10 U.S.C. § 911. The specific issue on appeal then is whether Article 111, UCMJ, is an "enactment of Congress" within the meaning of 18 U.S.C. § 13. If it is, then Hawaii Revised Statutes §§ 291–4(a)(1) and 291–4(a)(2) cannot be applied to defendants pursuant to the ACA, and the charges must be dismissed.

Faced with this identical issue in *United States v. Walker,* 552 F.2d 566 (4th Cir.), *cert. denied,* 434 U.S. 848, 98 S.Ct. 157, 54 L.Ed.2d 116 (1977), the Fourth Circuit Court of Appeals held that Article 111 of the UCMJ does not preclude application of state drunk driving laws to servicemen driving on federal enclaves. The court recognized that the ACA adopts state law only to the extent that no enactment of Congress proscribes the act or omission forbidden by state law. Nevertheless, the court found that Article 111 of the UCMJ is not an "enactment of Congress" within the meaning of the ACA.

The court reasoned that to hold otherwise would produce several anomalous results. First, such a construction would be inconsistent with prevailing doctrine that district courts have at least concurrent jurisdiction with military tribunals over offenses committed by servicemen.[1] *Id.* at 568 n. 3. Second, it would be contrary to the modern trend toward trying servicemen before district courts for offenses essentially civilian in nature.[2] *Id.* Finally, the court found that such a construction would subject civilians and servicemen to different laws and punishments for committing the same acts or omissions, "even though the actions of the latter may have no more relation to the military than those of the former." *Id.* Accordingly, the court construed the words "any enactment of Congress" to mean only those "enactments of general applicability." *Id.*

A district court within the Fourth Circuit previously had reached the same conclusion. In *United States v. O'Byrne,* 423 F.Supp. 588 (E.D.Va.1973), the court rejected the argument that Article 111 of the UCMJ precludes application of Virginia's drunk driving laws to a serviceman driving on a federal enclave. The court distinguished cases where state law had been improperly applied to alter or expand the definitions or burdens of penal statutes enacted by Congress and cognizable in the federal courts.[3] *Id.* at 590. The court

---

1. *Cf. Grafton v. United States,* 206 U.S. 333, 348, 27 S.Ct. 749, 752, 51 L.Ed. 1084 (1907); *Peek v. United States,* 321 F.2d 934 (9th Cir.1963), *cert. denied,* 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973 (1964).

2. *Cf. O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

3. *See, e.g., Williams v. United States,* 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946) (defendant accused of raping girl between ages sixteen and eighteen on Indian reservation, could not, pursuant to ACA, be prosecuted under Arizona statutory rape law fixing age of consent at eighteen, where federal code provided that sixteen is age of consent for carnal knowledge); *Hockenberry v. United States,* 422 F.2d 171 (9th Cir.1970) (defendant could not be sentenced under ACA to ten-year penitentiary term as provided by California assault with deadly weapon statute,

noted that Congress had provided for no general prohibition against drunk driving on federal enclaves. "Were drunk driving on federal enclaves prohibited by the Federal Criminal Code and thereby punishable *in the federal courts,*" the court explained, then "the Assimilative Crimes Act would not apply." *Id.* at 591 (emphasis in original).

Recently, however, one court has rejected this interpretation of the words "any enactment of Congress" as found in the ACA. In *United States v. Smith,* 614 F.Supp. 454 (D.Me.1985), the court held that Article 111 of the UCMJ precludes application of Maine's drunk driving laws to members of the armed forces driving on federal enclaves. The court did not take issue with the assertion in *Walker* that district courts have concurrent jurisdiction with military tribunals over offenses committed by military persons. Nor did the court question that there might be a trend towards trying military personnel in district courts for offenses essentially civilian in nature. Instead, the court reasoned that there could be no jurisdiction in federal court, concurrent or otherwise, unless state drunk driving laws were made *federal offenses* via application of the ACA. *Id.* at 457.

The court was similarly unimpressed with the *Walker* court's concern for discrepancies that might arise in the treatment of civilians vis à vis military personnel. According to the court, disparate treatment between civilians and soldiers "is a manifest premise of the UCMJ." *Id.* Thus, unlike the court in *Walker,* the *Smith* court found no anomalies that would justify construing the language of the ACA to mean other than that suggested by its plain language.[4]

The *Smith* court's observations are true enough as a matter of logic, but its holding is intimately tied to its underlying assumptions as to Congress' purpose in enacting the ACA. Even the *Smith* court recognized that courts should not adhere to the plain language of a statute where to do so would produce unreasonable results at variance with the legislative policy.[5] *Id.* If the *Smith* court misconstrued the funda-

---

where federal assault with dangerous weapon statute provided for five-year maximum sentence).

**4.** The magistrate noted that the Ninth Circuit Court of Appeals has cited *Walker* for the proposition that no express enactment of Congress proscribes drunk driving. *See United States v. Best,* 573 F.2d 1095, 1098 (9th Cir.1978). The magistrate reasoned that the court has thereby implicitly adopted as the law of this circuit the rationale set forth in *Walker.* While this may be true, the opinion in *Best* does not indicate whether the defendant in that case was a soldier subject to the UCMJ. Thus, in reviewing the magistrate's order, this court chooses not to rely on *Best. See also United States v. Holley,* 444 F.Supp. 1361, 1367 (D.Md.1977) (no indication that defendant was subject to the UCMJ, but being within Fourth Circuit, court bound by *Walker* decision regardless).

**5.** While "the meaning of a statute must, in the first instance, be sought in the language in which the act is framed," *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917), the ultimate function of the courts "is to construe the language so as to give effect to the intent of Congress." *United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). *See also Ozawa v. United States,* 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199 (1922). In doing so, courts may "look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail." *Ozawa, supra,* at 194, 43 S.Ct. at 67. As explained by the Supreme Court:

Obviously there is danger that the courts' conclusion as to legislative purpose will be unconsciously influenced by the judges' own views or by factors not considered by the enacting body. A lively appreciation of the danger is the best assurance of escape from its threat but hardly justifies an acceptance of a literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion. Emphasis should be laid, too, upon the necessity for appraisal of the purposes as a whole of Congress in analyzing the meaning of clauses or sections of general acts. A few words of general connotation appearing in the text of statutes should not be given a wide meaning, contrary to settled policy, "excepting as a different purpose is plainly shown."

*United States v. American Trucking Associations, Inc., supra,* 310 U.S. at 544, 60 S.Ct. at 1064 (cites omitted).

mental purpose behind the ACA, then the court's other observations are without significance to the immediate dispute.

The *Smith* court found that the purpose of the ACA is "to fill gaps" where Congress has taken no action to define the missing offenses. *Id.* at 458. In support of its conclusion, the court cited to *Williams v. United States*, 327 U.S. 711, 719, 66 S.Ct. 778, 782, 90 L.Ed. 962 (1946), and *United States v. Marcyes*, 557 F.2d 1361, 1364 (9th Cir.1977). Upon close reading, however, neither authority supports this *precise* conclusion. In *Williams*, the Supreme Court found that the purpose of the Act is "to use local statutes to fill in the gaps in the *Federal Criminal Code....*" 327 U.S. at 719, 66 S.Ct. at 782 (emphasis added). And in *Marcyes*, the court found the Act was designed "to fill in the gaps in the criminal law *applicable to federal enclaves....*" 557 F.2d at 1364 (emphasis added).

Perhaps immaterial at first glance, these subtle distinctions actually lay bare the disagreement between the courts in *Walker* and *O'Byrne* on the one hand, and *Smith* on the other. If, as the *Smith* court contends, the purpose of the ACA was "to fill gaps"—any gaps in federal penal law—then a literal reading of the statute best fulfills the legislative goal. On the other hand, if the ACA was designed to supplement the Federal Criminal Code—a code of general applicability—as it applies to federal enclaves, then the construction given the Act by the courts in *O'Byrne* and *Walker* is more consistent with congressional intent.[6]

Perhaps the most succinct statement as to Congress' purpose in enacting the ACA is found in *United States v. Sharpnack, supra.* There, the United States Supreme Court reviewed the legislative history of the Act and concluded: "The above series of substantial re-enactments demonstrates a consistent congressional purpose to apply the principle of conformity to state criminal laws in punishing most minor offenses committed within federal enclaves." *Id.,* 355 U.S. at 291, 78 S.Ct. at 295.

This interpretation of the ACA was not without precedent. The Court previously had had occasion in *Williams v. United States, supra,* to survey the history behind the ACA and its various amendments. There, the Court noted that the 1940 amendments to the Act "followed an explanation of the bill in identical letters from the Attorney General to the Speaker of the House of Representatives and to the Chairman of the Senate Committee on the Judiciary." *Id.,* 327 U.S. at 723, 66 S.Ct. at 784. The Court quoted:

> Certain crimes committed on Federal reservations are expressly defined in the Criminal Code. This is true of grave offenses, such as murder, manslaughter, rape, assault, mayhem, robbery, arson, and larceny [citations to Title 18, United States Code]. The Congress has not, however, legislated as to other crimes committed on Federal reservations, but has provided generally that as to them, the law of the State within which the reservation is situated, shall be applicable [citation to the predecessor of the current ACA].

*Id.* at 723 n. 26, 66 S.Ct. at 784 n. 26 (quoting from H.Rep. No. 1584, 76th Cong., 3d Sess., p. 2; S.Rep. No. 1699, 76th Cong., 3d Sess., p. 1).

This background strongly suggests that in enacting the ACA, Congress intended primarily to adopt for federal enclaves a

---

6. To some, distilling "legislative intent" from the words and history of a statute is nothing short of twentieth-century alchemy. Indeed, any member of Congress probably had his or her own particular reason for voting for or against any given piece of legislation. This difficulty in arriving at any "collective intent" of Congress suggests that the *Smith* court's decision to follow the literal language of the ACA is a perfectly logical one. On the other hand, "[t]he life of the law has not been logic: it has been experience." O. Holmes, The Common Law 1 (1881). Experience suggests that, in enacting the ACA, no member of Congress had occasion to consider the specific question that faces this court today. It is with these thoughts that the court proceeds to a determination of the legislative intent behind the ACA as it relates to the problem at hand.

criminal code of general applicability. In doing so, it reserved to itself the option of implementing specific federal legislation defining particular offenses where it thought appropriate. This is an option of which Congress has availed itself with respect to a wide variety of more serious offenses.[7]

■ Thus, with a single enactment, Congress not only filled the gaps in the criminal code for federal enclaves (gaps relating primarily to minor offenses), but by adhering to the principle of conformity with state law, did so in a way that provided persons within the enclaves the same protections as are afforded to those on the outside. *See United States v. Kiliz*, 694 F.2d 628, 629 (9th Cir.1982). Viewed in this light, drunk driving legislation is precisely the type of state law that Congress intended to assimilate into federal law by passage of the ACA.

■ That Congress specifically included prohibitions against drunk driving in the UCMJ does not detract from this conclusion. Congress has specifically provided for many offenses in the UCMJ which are also made criminal under the general federal criminal code. *See, e.g.,* 10 U.S.C. § 918 (murder); 10 U.S.C. § 920 (rape); 10 U.S.C. § 921 (larceny); 10 U.S.C. § 922 (robbery); 10 U.S.C. § 926 (arson). Thus, it is entirely consistent with congressional practice to enact criminal legislation of general applicability while making certain offenses punishable under the UCMJ as well.

This point, perhaps, deserves more emphasis. For example, the court in *Smith* found that whether or not a particular state law is assimilated by the ACA is a question "entirely distinct" from that of whether federal courts have concurrent jurisdiction with military tribunals over offenses committed by military personnel. 614 F.Supp. at 457. While it is true that a federal court could have no jurisdiction, concurrent or otherwise, unless a federal offense has been committed, the concept of concurrent jurisdiction is extremely relevant to determining the intended scope of the ACA. The fact that Congress has provided for substantial overlap in offenses defined both under the UCMJ and the general federal code is a strong indication that Congress did not intend to preempt assimilation of state law via the ACA by enactments contained in the UCMJ.

Indeed, taken to its logical conclusion, the argument advanced and accepted in *Smith* would render the ACA inoperative as applied to persons subject to the UCMJ. Article 134 of the UCMJ makes cognizable as military crimes all "crimes and offenses

7. This is not to suggest that Congress may preempt state legislation only with respect to more serious offenses or only by enactments contained in the general provisions of the criminal code, Title 18, United States Code. Quite to the contrary, federal agency regulations enacted pursuant to congressional authority have the force of law and may serve to preempt the assimilation of state law pursuant to the ACA. *See, e.g., United States v. Baker*, 603 F.2d 104 (9th Cir.1979); *United States v. Adams*, 502 F.Supp. 21 (S.D.Fla.1980). What is intimated here is merely that in enacting the ACA, Congress intended to adopt a general set of rules governing the behavior of individuals on federal enclaves. The UCMJ, on the other hand, is a code of limited application designed to address the specific concerns of the military and its need for discipline. The provisions of the UCMJ do not exhaust the need for, nor obviate the desirability of, general criminal legislation. *United States v. Adams, supra,* is instructive on this point. The defendant in that case was apprehended for carrying a concealed revolver into a federal courthouse. He was charged, pursuant to the ACA, under a Florida statute making it a felony to carry a concealed firearm. He challenged his indictment under the ACA because a General Services Administration ["GSA"] regulation promulgated pursuant to 40 U.S.C. § 318a specifically made it a misdemeanor to carry a concealed weapon onto federal property. The government cited *Walker* for the proposition that GSA regulations, like the provisions of the UCMJ, are not "enactments of Congress" within the meaning of the ACA. The court rejected this interpretation, pointing out that the GSA regulation was applicable to all persons (other than law enforcement personnel) who carried concealed weapons on federal property. The UCMJ, on the other hand, was applicable only to military personnel. *Id.* at 24 & n. 1. Accordingly, the court dismissed the indictment under the ACA.

not capital" defined in federal civilian law. 10 U.S.C. § 934; *see United States v. Rowe,* 13 U.S.C.M.A. 302, 32 C.M.R. 302 (1962). Included within this conglomeration of federal civilian offenses are those state crimes assimilated into federal law by operation of the ACA. *See United States v. Wright,* 5 M.J. 106, 111 (C.M.A.1978). In effect, Article 134 is the military equivalent of the ACA. Using federal civilian law, and state law made federal by operation of the ACA, it fills the gaps in the UCMJ where Congress has not specifically provided that a particular offense is otherwise cognizable in the military courts. Consequently, any state offense which is made a federal crime pursuant to the ACA, is also made a military crime pursuant to Article 134, assuming the offense is not already specifically defined in the UCMJ. Taken to its extreme, the logic advanced in *Smith* would mean that whenever the ACA and Article 134 combine to fill the gaps in the military law, there is no gap left in the general federal criminal law to be filled by the ACA. It is inconceivable that Congress would have intended to divest federal courts of jurisdiction over military personnel in all such cases. *Cf. Grafton v. United States,* 206 U.S. 333, 348, 27 S.Ct. 749, 752, 51 L.Ed. 1084 (1907). Military commanders have long recognized the soundness of this conclusion and have routinely referred violations of state traffic laws to United States Magistrates for prosecution pursuant to the ACA. *See United States v. Chavez,* 6 M.J. 615, 619–20 (A.C.M.R. 1978).

■ Accordingly, the court finds that the words "any enactment of Congress" as used in the ACA refer to enactments of general applicability cognizable in the federal courts. Because there is no such specific enactment of Congress prohibiting drunk driving on a federal enclave, defendants were properly charged under the ACA.

The Order Denying Defendants' Motion to Dismiss Charges is AFFIRMED.