**UNITED STATES of America,
Appellant,**

v.

**James K. MARIEA and Jerry M. Smith,
Defendants, Appellees.**

**UNITED STATES of America, Appellee,**

v.

**James K. MARIEA,
Defendant, Appellant.**

**Nos. 85–1770, 85–1946.**

United States Court of Appeals,
First Circuit.

Argued March 4, 1986.
Decided June 27, 1986.

Me., and Richard S. Cohen, U.S. Atty., Portland, Me., were on brief, for U.S. of America.

Joseph H. Field, with whom Mary Lou Ciolfi and Loyd, Bumgardner, Field & Patterson, Brunswick, Me., were on brief, for James K. Mariea and Jerry M. Smith.

Before CAMPBELL, Chief Judge, COFFIN, Circuit Judge, and PETTINE,* Senior District Judge.

LEVIN H. CAMPBELL, Chief Judge.

The Assimilative Crimes Act ("ACA" or the "Act"), 18 U.S.C. § 13 (1982), supplements federal criminal law by providing that on federal reservations the relevant state criminal law is incorporated into federal law in respect to conduct "not made punishable by any enactment of Congress."[1] Thus, if an individual violates Maine criminal law on a federal reservation in Maine, and his conduct is not made punishable by any enactment of Congress, the particular Maine penal provision which is violated becomes a part of federal law, and he may be prosecuted for the state law violation in the United States District Court for the District of Maine.

At issue in the present case is whether the fact that military personnel charged with drunken driving on a federal military installation can be prosecuted for that conduct in a court-martial under a provision of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. §§ 801 *et seq.* (1982 & Supp. II 1984), bars assimilation into federal law of the Maine state law punishing drunken driving. Defendants argue, and the district court has ruled, that the ACA does not apply since the conduct is made punishable by an enactment of Congress,

Margaret D. McGaughey, Asst. U.S. Atty., Portland, Me., with whom William H. Browder, Jr., Asst. U.S. Atty., Bangor,

---

* Of the District of Rhode Island, sitting by designation.

1. 18 U.S.C. § 13 provides:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title [defining the special maritime and territorial jurisdiction of the United States], is guilty of any act or omission which, although *not made punishable by any enactment of Congress,* would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

(Emphasis added.)

namely, the UCMJ. This ruling, if sustained, leaves the federal district court without jurisdiction and requires that military defendants be prosecuted, if at all, by local military authorities. The United States has appealed from this ruling.

## I.

Defendants James K. Mariea and Jerry M. Smith are both active-duty members of the armed forces stationed at the Naval Air Station at Brunswick, Maine. On January 17, 1985, Mariea was arrested after a hit-and-run accident on the military base, and subsequently charged in federal district court with violating Maine criminal statutes by driving while intoxicated, Me.Rev. Stat.Ann. tit. 29, § 1312–B (Supp.1985),[2] leaving the scene of an accident, Me.Rev. Stat.Ann. tit. 29, § 894 (1978),[3] and eluding police, Me.Rev.Stat.Ann. tit. 29, § 2501–A(3) (Supp.1985).[4] On February 11, 1985, Smith was apprehended on the Naval Air Station for driving under the influence, and a one-count information was subsequently filed, charging him with drunken driving in violation of Me.Rev.Stat.Ann. tit. 29, § 1312–B. Since the state offenses took place on a federal enclave, the criminal information alleged that they were incorporated into federal law under the Assimilative Crimes Act.

The district court, on defendants' motion, dismissed the charge of driving under the influence as to both defendants, reasoning that a similar provision in the UCMJ precluded federal court jurisdiction under the

Act. *United States v. Smith*, 614 F.Supp. 454 (D.Me.1985). Thus the entire information against Smith was dismissed. The court determined, however, that it had jurisdiction over the two additional charges against Mariea (for leaving the scene of an accident and eluding the police) because they were not specifically provided for under the UCMJ. Mariea subsequently entered a conditional guilty plea on those counts under Fed.R.Crim.P. 11(a), reserving his right to appeal from the court's pretrial ruling.

Because we hold that the Uniform Code of Military Justice is not an "enactment of Congress" within the meaning of the Assimilative Crimes Act, and thus that the Maine provision condemning driving under the influence is incorporated into federal law, we hold that the district court 1) erred in dismissing the drunken driving charges as to both defendants for lack of jurisdiction under the Act; but 2) correctly found that there was jurisdiction over the two additional counts against Mariea. Accordingly, we vacate and remand the cases on the drunken driving charges, and affirm Mariea's convictions on the charges of leaving the scene of an accident and eluding the police.

## II.

■ Under the Assimilative Crimes Act, conduct punishable under state law is assimilated into federal law if it occurs on land reserved to the federal government, so long as the conduct is "not made punisha-

---

**2.** Section 1312–B provides in part:
　1. *Offense.* A person is guilty of a criminal violation under this section if he operates or attempts to operate a motor vehicle:
　　A. while under the influence of intoxicating liquor or drugs or a combination of liquor and drugs; or
　　B. while having 0.10% or more by weight of alcohol in his blood.

**3.** Section 894 provides:
　The driver of any vehicle involved in an accident resulting only in damage to a vehicle which is driven or attended by any person shall immediately stop the vehicle at the scene of the accident, or as close thereto as possible, but shall forthwith return to the scene and in

every event shall remain at the scene of the accident until he has given his name, address and the registration number of the vehicle he is driving, and exhibited, upon request and if available, his operator's license to the driver or occupant of or person attending any vehicle with which he collided.

**4.** Section 1312–B(3) provides:
　Whoever after being required or signaled to stop, attempts to elude a law enforcement officer by driving a vehicle at a reckless rate of speed which results in a high-speed chase between the operator's vehicle and any law enforcement vehicle using a blue light or siren is guilty of a class D crime.

ble by any enactment of Congress." *See* note 1, *supra.* Thus if a provision of the Federal Criminal Code, 18 U.S.C. §§ 1 *et seq.* (1982 & Supp. II 1984), makes punishable the same conduct punishable under state law, the ACA does not apply. *See, e.g., Williams v. United States,* 327 U.S. 711, 717, 66 S.Ct. 778, 781, 90 L.Ed. 962 (1946); *United States v. Butler,* 541 F.2d 730, 732, 734 (8th Cir.1976); *United States v. Patmore,* 475 F.2d 752, 753 (10th Cir. 1973); *Fields v. United States,* 438 F.2d 205, 207 (2d Cir.), *cert. denied,* 403 U.S. 907, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971); *United States v. O'Byrne,* 423 F.Supp. 588, 590 (E.D.Va.1973).

Defendants contend that the UCMJ is an enactment of Congress under the Act,[5] and that since a provision in the UCMJ punishes drunken driving by military personnel, 10 U.S.C. § 911 (1982),[6] resort to state law through the ACA is impermissible. In contrast, the government urges us to construe the phrase "any enactment of Congress" to refer to criminal statutes of *general* applicability. Since the UCMJ is a specialized code that applies only to military personnel, the government contends that a UCMJ provision against drunken driving should not be viewed as an enactment of Congress as that term is used in the Act, and thus that state law properly applies to defendants.

The district court rejected the government's position because it found no reason to depart from what it saw as the plain language of the Act by restricting the scope of the phrase "any enactment of

Congress." Rather it found that the purpose of the ACA is to fill gaps in the federal law "where no action of Congress has been taken to define the missing offenses." *Williams,* 327 U.S. at 719, 66 S.Ct. at 782. The district court concluded that since drunken driving by servicemen was already punishable by court-martial under the UCMJ, there was no "gap" in criminal law to be filled by state law. Prosecution under the Act, the court observed, would mean "duplicative punishments for the same conduct [when] committed by members of the armed forces." Indeed, "[n]o reason has been advanced, nor can one be found, why Congress would have intended that conduct by servicemen which it has specifically proscribed under the UCMJ should also be punishable under the general mandate of the ACA."

We, of course, agree that "a statute's plain language is the primary indicator of its meaning." *Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp.,* 545 F.2d 754, 756 (1st Cir. 1976), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). But we do not find the language in the phrase "made punishable by any enactment of Congress" to be "plain" as respects the precise question before us: whether the ACA refers only to penal laws of general application, or whether it was intended to include the UCMJ—a code not generally applicable to the citizenry, designed solely to regulate

---

**5.** In support, defendants rely on *United States v. Butler,* 541 F.2d 730 (8th Cir.1976), which held that the National Firearms Act, 18 U.S.C.App. § 1202(a) (1982 & Supp. II 1984), was a congressional enactment precluding the application of the ACA. We find this case inapposite since *Butler* only addressed the issue of whether a specific federal statute of general applicability was an enactment under the Act. While the *Butler* court refused to construe "any enactment" as referring only to laws dealing with federal enclaves, it recognized that federal enactments under the ACA must, unlike provisions of the UCMJ, be of general applicability. *Id.* at 734.

**6.** Section 911 provides that "[a]ny person subject to this chapter who operates any vehicle

while drunk, or in a reckless or wanton manner, shall be punished as a court-martial may direct."

In its appellate brief, the government contends that it does not concede that drunken driving under the UCMJ is the same as the charge of operating under the influence of intoxicating liquor under Maine law. The district court, however, stated that the government "does not dispute that operating under the influence, *see* 29 M.R.S.A. § 1312-B, is an 'act or omission' punishable under Article 111 of the UCMJ." We need not resolve this issue since, even assuming that the two offenses are the same, we hold that the UCMJ provision does not preempt the assimilation of Maine state law in this case.

the military. We note that the "any enactment" phraseology was of recent invention, having been preceded by other language which was changed several times, all without apparent intent to alter the Act's basic meaning. *Williams*, 327 U.S. at 722–23, 66 S.Ct. at 783–84. Thus the question before us cannot be answered without examining the Act's design and historical purpose. *See United States v. Fulkerson*, 631 F.Supp. 319, 322 n. 5 (D.Hawaii 1986).

As reviewed in *United States v. Sharpnack*, 355 U.S. 286, 288–94, 78 S.Ct. 291, 293–96, 2 L.Ed.2d 282 (1958),[7] the history of the ACA strongly suggests that the present phrase "any enactment of Congress" means only those criminal laws of *general* applicability, and not a specialized, internal disciplinary code like the UCMJ which covers only military personnel. The only other circuit to face this issue has reached a similar conclusion, *United States v. Walker*, 552 F.2d 566 (4th Cir.), *cert. denied*, 434 U.S. 848, 98 S.Ct. 157, 54 L.Ed.2d 116 (1977), as have two district courts, *Fulkerson*, 631 F.Supp. 319; *United States v. O'Byrne*, 423 F.Supp. 588 (E.D.Va.1973); *see also United States v. Best*, 573 F.2d 1095, 1098 (9th Cir.1978) (citing *Walker* with approval); *United States v. Holley*, 444 F.Supp. 1361, 1367 (D.Md.1977) (same). We find the reasoning of these courts persuasive, particularly that of Judge King in *Fulkerson*, whose decision earlier this year followed the opinion below.

**III.**

The first Federal Crimes Act, enacted in 1790,[8] legislated a number of federal crimes applicable to federal enclaves, but it soon was apparent that a more comprehensive set of penal laws was needed to govern offenses committed on federal property. *Sharpnack*, 355 U.S. at 288–89, 78 S.Ct. at 293. Rejecting the option of enacting a separate criminal code for federal lands, Congress chose in 1825 to add a provision to the Federal Crimes Act, adopting as federal law the offenses made punishable by the laws of the state in which the enclaves were located, unless the offenses were "specially provided for by any law of the United States."[9] *Id.* at 289–90, 78 S.Ct. at 293–94. It appears obvious that the state offenses which were to apply in the federal enclaves were generally applicable state crimes, and the federal offenses which might prevent operation of the state laws were, likewise, generally applicable federal crimes. There was never any suggestion that the Articles of War and similar articles for the Navy (precursors to the UCMJ) which were in existence in 1825 and thereafter would toll the operation of the ACA.

While the language of the Act now reads "any enactment of Congress,"[10] this change cannot be construed as transforming clear congressional intent to supplement *generally applicable* federal criminal laws (primarily, the Federal Criminal Act, later codified as the Federal Criminal Code) to include statutes of restricted applicabili-

---

**7.** For a discussion of the legislative history of the Act, *see also Williams v. United States*, 327 U.S. 711, 718–24, 66 S.Ct. 778, 782–85, 90 L.Ed. 962 (1946); *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 398–401, 64 S.Ct. 622, 630–31, 88 L.Ed. 814 (1944) (Frankfurter, J., dissenting); *United States v. Press Publishing Co.*, 219 U.S. 1, 9–13, 31 S.Ct. 212, 213–15, 55 L.Ed. 65 (1911).

**8.** 1 Stat. 112 (1790).

**9.** Act of March 3, 1825, ch. 65, § 3, 4 Stat. 115, provided in part:
[I]f any offence shall be committed in any of the places aforesaid, the *punishment of which offence is not specially provided for by any law of the United States*, such offence shall, upon a conviction in any court of the United States

having cognisance thereof, be liable to, and receive the same punishment as the laws of the state in which such fort, dock-yard, navy-yard, arsenal, armory, or magazine, or other place, ceded as foresaid, is situated, provide for the like offence when committed within the body of any county of such state. (Emphasis added.)

**10.** The language of the ACA underwent various changes through the years. In 1940, for example, the phrasing was changed to refer to doing or omitting to do "any act or thing which is not made penal by any laws of Congress...." 18 U.S.C. § 468, 54 Stat. 234, *quoted in Williams*, 327 U.S. at 712, 66 S.Ct. at 779.

ty.[11] Many courts, including the Supreme Court, that have examined the scope and purposes of the ACA have acknowledged that the Act refers to the Federal Criminal Code, or to generally applicable federal criminal laws.[12] Here, while Congress itself penalized an increasing number of major offenses when committed on federal enclaves,[13] it has not dealt with drunken driving in the Federal Criminal Code or in any other generally applicable criminal statute. It follows that assimilation of the state offense is appropriate.

To construe the ACA as disallowing assimilation in this case would do violence to two major aims of Congress in enacting it. One was to ensure that criminal offenses not be committed with impunity on federal enclaves simply by crossing jurisdictional lines.[14] *See United States v. Press Publishing Co.*, 219 U.S. 1, 12, 31 S.Ct. 212, 215, 55 L.Ed. 65 (1911). Another was to punish most minor offenses committed on federal enclaves in conformity to local law, thus achieving statewide uniformity, *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 101, 60 S.Ct. 431, 434, 84 L.Ed. 596 (1940), and deferring to the authority of the states over land within their borders.[15] Defendants, under the interpretation they urge, "could not be prosecuted in federal court for the identical offense on the roads in the federal enclave as [they] had only moments before perpetrated on the state roads." *United States v. Kiliz*, 694 F.2d 628, 632 (9th Cir.1982). While defendants could be court-martialed under the UCMJ, the option of prosecution by military authorities under the UCMJ provision is not an adequate substitute for prosecution by civilian au-

**11.** In identical letters to the Speaker of the House of Representatives and to the Chairman of the Senate Committee on the Judiciary, which accompanied the bill for the 1940 amendments to the ACA, the Attorney General at the time noted that:

Certain crimes committed on Federal reservations are *expressly defined in the Criminal Code*. This is true of grave offenses, such as murder, manslaughter, rape, assault, mayhem, robbery, arson, and larceny [citations to Title 18, U.S.C.]. *The Congress has not, however, legislated as to other crimes committed on Federal reservations*, but has provided generally that as to them, the law of the State within which the reservation is situated, shall be applicable [citation to a predecessor ACA]. H.R.Rep. No. 1584, 76th Cong., 3d Sess. 2 (1940); S.Rep. No. 1699, 76th Cong., 3d Sess. 13 (1940), *quoted in Williams*, 327 U.S. at 723 n. 26, 66 S.Ct. at 784 n. 26 (emphasis added).

**12.** *See, e.g., Williams*, 327 U.S. at 718–19, 66 S.Ct. at 782; *Yellow Cab*, 321 U.S. at 398–401, 64 S.Ct. at 630–31 (Frankfurter, J., dissenting); *Press Publishing*, 219 U.S. at 10–13, 31 S.Ct. at 214–15; *United States v. Walker*, 552 F.2d 566, 568 n. 3 (4th Cir.1977); *United States v. Butler*, 541 F.2d 730, 734 (8th Cir.1976); *United States v. Fulkerson*, 631 F.Supp. 319, 323–24 (D.Hawaii 1986); *United States v. Adams*, 502 F.Supp. 21, 24 (S.D.Fla.1980); *United States v. Chapman*, 321 F.Supp. 767, 770 (E.D.Va.1971).

**13.** *See, e.g.,* 18 U.S.C. § 81 (1982) (arson); 18 U.S.C. § 1111 (1982 & Supp. II 1984) (murder); 18 U.S.C. § 2031 (1982) (rape); 18 U.S.C. § 2111 (1982) (robbery). For further examples, *see Sharpnack*, 355 U.S. at 289 n. 5, 78 S.Ct. at 294 n. 5.

**14.** In 1823 then Congressman James Buchanan noted that:

a great variety of actions ... which are punished as crimes at the common law, and by every State in the Union, may be committed with impunity on the high seas, and in any place where Congress has exclusive jurisdiction. To afford an example: An assault and battery, with intent to commit murder, may be perpetrated, either on the high seas, or in a fort, magazine, arsenal, or dockyard, belonging to the United States, and there exists no law to punish such an offence.

This is a palpable defect in our system, which requires a remedy; and it is astonishing that none has ever yet been supplied. Annals of Congress, 17th Cong., 2d Sess. 929 (1822–1823), *quoted in Williams*, 327 U.S. at 720–21 n. 19, 66 S.Ct. at 783 n. 19. (We note that Buchanan nowhere suggested that the Articles of War, then in effect, provided a sufficient means of redress for offenses on military enclaves that were not covered by general enactments of Congress.)

**15.** In adopting the ACA, Congress

sedulously considered the two-fold character of our constitutional government, and had in view the enlightened purpose, so far as the punishment of crime was concerned, to interfere as little as might be with the authority of the States on that subject over all territory situated within their exterior boundaries, and which hence would be subject to exclusive state jurisdiction but for the existence of a United States reservation.

*Press Publishing*, 219 U.S. at 9–10, 31 S.Ct. at 214.

thorities under a civilian criminal statute. *See* pages 1100–1101, *infra.* Moreover, since civilians charged with committing the same offense on a federal enclave would be subject to state law under the ACA, civilian offenders would face different, and possibly harsher, laws and punishments than would members of the military, who would be exempt from state laws that would otherwise apply to every other person in the state.[16]

Unlike the district court, we see little reason to tolerate "[d]isparate treatment of civilians. and soldiers" in this case. To be sure, courts have "long recognized that the military is, by necessity, a specialized society separate from civilian society," with "laws and traditions of its own...." *Parker v. Levy,* 417 U.S. 733, 743, 94 S.Ct. 2547, 2555–56, 41 L.Ed.2d 439 (1973). But this has never been deemed to mean wholesale exemption from the penal laws that govern the rest of society,[17] and we do not think Congress meant to create such an exception under the Act. It is one thing not to apply state criminal law when Congress has legislated its own general criminal law for the same conduct, but quite another to exempt stateside military personnel from accountability under any and all general criminal law when an offense occurs on federal land, leaving them subject only to such discipline as their commanders choose to impose.

It stands to reason that the federal laws Congress had in mind as barring assimilation of state laws were federal laws of a character similar to the state laws they preempted—*i.e.,* criminal laws of general application. The articles of the UCMJ, however, pertain only to members of the armed forces. And they differ from civilian criminal statutes in a number of important respects. *Parker,* 417 U.S. at 743–52, 94 S.Ct. at 2555–60. For one, the primary goal of the UCMJ, unlike that of state and federal criminal law, is instilling and maintaining discipline, on the notion that "a hierarchical structure of discipline and obedience to command, unique in its application to the military establishment and wholly different from civilian patterns" are key to an effective fighting force. *Chappell v. Wallace,* 462 U.S. 296, 300, 103 S.Ct. 2362, 2366, 76 L.Ed.2d 586 (1983); *see also United States ex rel. Toth v. Quarles,* 350 U.S. 11, 17, 22, 76 S.Ct. 1, 8, 100 L.Ed. 8 (1955). As a result, the UCMJ regulates military life far more comprehensively than a typical state criminal code regulates civilian life,[18] *Parker,* 417 U.S. at 750–51, 94 S.Ct. at 2559, with "strict discipline and regulation that would be unacceptable in a civilian setting," *Chappell,* 462 U.S. at 300, 103 S.Ct. at 2365. Another key difference is that minor offenses under the UCMJ are often enforced only by "forms of administrative discipline which are below the threshold of what would normally be considered a criminal sanction...." [19] *Parker,* 417 U.S. at 750, 94 S.Ct. at 2559.

---

**16.** We note that in this case a person convicted of drunken driving under Maine law, Me.Rev. Stat.Ann. tit. 29, § 1312–B, will automatically have his driver's license suspended for a minimum period of 90 days. A military court, however, is not empowered to impose this penalty on a military defendant. *Cf. United States v. Lee,* 786 F.2d 951, 954 (9th Cir.1986) (quoting a district court judge as observing that "[t]he Air Force 'in house' handling of its own military offenders [in traffic violation cases] often provide[s] for noncriminal adjudication").

**17.** For example, if defendants had been arrested for drunken driving while on Maine state roads, there is no question that they could be prosecuted under state law in state court. Moreover, defendants are subject to federal criminal law under the Federal Criminal Code. For good reason, there is no general concept in our society that military offenders are ordinarily exempt from civilian criminal jurisdiction.

**18.** Article 133 of the UCMJ, for example, provides for the punishment of "conduct unbecoming an officer and a gentleman," 10 U.S.C. § 933 (1982), while Article 134 proscribes, *inter alia,* "all disorders and neglects to the prejudice of good order and discipline in the armed forces," 10 U.S.C. § 934 (1982). *See Parker v. Levy,* 417 U.S. 733, 749–52, 94 S.Ct. 2547, 2558–60, 41 L.Ed.2d 439 (1973) (discussing differences between the UCMJ and the civilian criminal code).

**19.** As the Supreme Court observed in *Parker v. Levy,*

   Though all of the offenses described in the Code are punishable "as a court-martial may direct," and the accused may demand a trial

Finally, military courts-martial and the civilian court system constitute totally separate systems of justice, with different procedures, protections and personnel. *See O'Callahan v. Parker*, 395 U.S. 258, 262–66, 89 S.Ct. 1683, 1685–87, 23 L.Ed.2d 291 (1969); *Toth*, 350 U.S. at 15–19, 76 S.Ct. at 4–6. It is clear that for service personnel—especially those stationed in this country in times of peace—military justice was designed to supplement, not to displace, the civilian criminal justice system. Thus a provision of the UCMJ, enforceable only within the military establishment, cannot be construed to displace a civilian penal provision.

We do not share the district court's concern that finding jurisdiction under the ACA would render court-martial jurisdiction meaningless. Concurrent jurisdiction is a well-established doctrine. Under 18 U.S.C. § 3231 (1982), federal district courts share concurrent jurisdiction with military courts over "all offenses against the laws of the United States" [20] committed by military personnel. *See Gosa v. Mayden*, 413 U.S. 665, 673, 93 S.Ct. 2926, 2932–33, 37 L.Ed.2d 873 (1973); *Grafton v. United States*, 206 U.S. 333, 348, 27 S.Ct. 749, 752, 51 L.Ed. 1084 (1907); *Walker*, 552 F.2d at 567, 568 n. 5. Many offenses under the UCMJ are also punishable under the Federal Criminal Code.[21] This overlap in civilian and military jurisdiction makes it clear that Congress did not intend to preclude assimi-

lation of state law under the ACA with provisions in the UCMJ. *See Fulkerson*, 631 F.Supp. at 324. Concurrent jurisdiction simply gives the applicable authorities a choice of where to prosecute, an election generally resolved by considerations of comity. *See Ponzi v. Fessenden*, 258 U.S. 254, 259, 42 S.Ct. 309, 310, 66 L.Ed. 607 (1922). Military authorities can move swiftly to invoke court-martial jurisdiction where issues of military discipline are paramount. It can be anticipated that the United States Attorney, in determining whether to bring charges in federal court or to leave matters to a military court, will take into account proper interests of the military as well as other considerations.

Finally, it must be borne in mind that drunken driving is not an offense peculiar to military society, as disobeying an order by a superior or leaving an assigned post may be. *See Toth v. Quarles*, 350 U.S. at 18, 76 S.Ct. at 5–6. While drunken driving belongs appropriately in the UCMJ for situations where there is no adequate civilian enforcement mechanism (such as abroad or in a war theatre), or where military discipline is strongly implicated (such as where the driver is on duty), it is also an offense which may often be better left to civilian authorities even when occurring on a military base. The laws governing the safety of state roads (which will often interconnect with those in a federal installation) are

---

by court-martial, Art. 15 of the Code also provides for the imposition of nonjudicial "disciplinary punishments" for minor offenses without the intervention of a court-martial. 10 U.S.C. § 815. The punishments imposable under that article are of a limited nature. With respect to officers, punishment may encompass suspension of duty, arrest in quarters for not more than 30 days, restriction for not more than 60 days, and forfeiture of pay for a limited period of time. In the case of enlisted men, such punishment may additionally include, among other things, reduction to the next inferior pay grade, extra fatigue duty, and correctional custody for not more than seven consecutive days. Thus, while legal proceedings actually brought before a court-martial are prosecuted in the name of the Government, and the accused has the right to demand that he be proceeded against in this

manner before any sanctions may be imposed upon him, a range of minor sanctions for lesser infractions are often imposed administratively. Forfeiture of pay, reduction in rank, and even dismissal from the service bring to mind the law of labor-management relations as much as the civilian criminal law. 417 U.S. at 750, 94 S.Ct. at 2559 (footnotes omitted).

**20.** Section 3231 reads:

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

**21.** *See, e.g.,* 10 U.S.C. § 918 (1982) (murder); 10 U.S.C. § 920 (1982) (rape); 10 U.S.C. § 922 (1982) (robbery); 10 U.S.C. § 926 (1982) (arson). *Compare with* note 13.

precisely the kind of laws that a state has a strong interest in seeing enforced uniformly as to all persons, on or off a military base.

■ We conclude, in keeping with the views of the Fourth Circuit and other district courts, as well as those of the United States, that "any enactment of Congress" in the ACA refers to penal enactments of general applicability, not to the UCMJ. In view of our conclusion, we need not specifically address the question of whether the district court properly found that there were no UCMJ provisions making punishable the two additional charges against Mariea—eluding the police and leaving the scene of an accident—upon which he was convicted. Even assuming that the UCMJ contains sufficiently similar offenses, Maine state law as to those offenses would still be assimilated into federal law since the UCMJ is not an enactment of Congress under the Act that could preclude federal jurisdiction. We are not aware of, and the parties have not argued, that there is any other federal statute specifically providing for either offense.

■ Accordingly, we hold that the district court had jurisdiction to hear the two additional charges against Mariea, and his conviction is affirmed. The dismissal of the drunken driving counts as to both defendants is vacated, and the cases are remanded to the district court for trial or any other proceedings consistent herewith.[22]

*In No. 85–1770, the judgment of the district court is vacated and remanded; in No. 85–1946, the judgment of the district court is affirmed.*

**22.** Defendants argue that if this court finds concurrent jurisdiction between the district court and the military court martial, their cases should nonetheless be heard in the military forum. In support, they cite a "Memorandum of Understanding" between the Departments of Defense and Justice contained in the Manual for Courts Martial, App. 3 (1984), which establishes informal guidelines for handling cases of concurrent jurisdiction. These internal guidelines, however, were promulgated for purposes of ad-

ministrative convenience, and defendants cannot rely on them to deprive the district court of jurisdiction. *See Massachusetts Department of Correction v. Law Enforcement Assistance Administration,* 605 F.2d 21, 25–26 (1st Cir.1979) (holding that internal agency guidelines designed to serve administrative convenience, and not to protect rights of private parties, cannot serve as basis for claim). We have considered the other arguments by defendants and find them without merit.