**UNITED STATES of America**

v.

**Laurie A. KNOTT, Appellant.**

**Crim. No. 89–0307–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 19, 1989.

Denying reconsideration, —— F.Supp. ——.

---

**1366**

Janet S. Reincke, Asst. U.S. Atty., Alexandria, Va., for U.S.

Robert Gill, Washington, D.C., for Knott.

## MEMORANDUM

ELLIS, District Judge.

This appeal raises a novel question concerning a federal magistrate's authority to revoke a state issued driver's license. Appellant, Laurie A. Knott, was stopped by United States Park Police officers on the George Washington Memorial Parkway in Virginia and charged with (i) driving while intoxicated in violation of 36 C.F.R. § 4.23(a)(2),[1] (ii) driving while under the influence of alcohol in violation of 36 C.F.R. § 4.23(a)(1), and (iii) failure to stay in one lane in violation of Virginia Code § 46.1–206(b), assimilated by 18 U.S.C. § 13. Pursuant to an agreement with the government, Knott pled guilty to the charge of Driving While Intoxicated ("DWI") in return for the dismissal of the two remaining charges. The Magistrate subsequently fined the appellant, placed her on probation for one year, revoked her privilege to operate a motor vehicle in Virginia for six months pursuant to Virginia Code § 46.1–441.1,[2] and then suspended the revocation in its entirety. Appellant's sole claim of error on appeal is that the Magistrate had no authority to revoke her license to drive a motor vehicle on the highways of Virginia.[3] For the reasons stated below, this Court agrees and, therefore, reverses the license revocation portion of the Magistrate's sentence.

It is undisputed that the appellant's DWI conviction pursuant to 36 C.F.R. § 4.23(a)(2) was correct and untainted by error. Only the Magistrate's revocation of appellant's license is disputed as *ultra vires*. The maximum punishment by regulation for this infraction is a fine of $500 and imprisonment for six months. 36 C.F.R. § 1.3. Congress prescribed this as the maximum punishment for a violation of any of the National Park Service's regulations (the "Regulations"). *See* 16 U.S.C. § 3.[4] Neither the Regulations nor any fed-

---

1. Title 36, Part 4 of the Code of Federal Regulations governs vehicles and traffic safety within areas under the control of the National Park Service, Department of the Interior. Thus, 36 C.F.R. § 4.23(a) provides in pertinent part:

   (a) Operating or being in actual physical control of a motor vehicle is prohibited while:
   (1) Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or
   (2) The alcohol concentration in the operator's blood or breath is 0.10 grams or more of alcohol per 100 milliliters of blood or 0.10 grams or more of alcohol per 210 liters of breath.

2. This section provides in pertinent part:
   When any person is found guilty of a violation of any traffic regulation by a United States Magistrate ... which violation occurred on a federal reservation, and, for which, if such violation had occurred on the highways of this Commonwealth, revocation of such person's driver's license would be

   mandatory or discretionary with a court of this Commonwealth, such magistrate or judge is authorized to revoke such driver's license. Va.Code Ann. § 46.1–441.1 (repealed October 1, 1989 and reenacted as Va.Code Ann. § 46.2–415 (Repl.Vol.1989)).

3. The government does not argue that the Magistrate's suspension of the license revocation operates to moot this appeal. *See Sibron v. New York*, 392 U.S. 40, 57, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1968) (criminal case moot only if no collateral consequences can be imposed pursuant to the challenged conviction); *United States v. Camil*, 497 F.2d 225, 227–28 (5th Cir. 1974) (criminal case not moot even though sentence suspended).

4. The National Park Service's authority to promulgate regulations stems from 16 U.S.C. § 3, which provides in pertinent part:
   The Secretary of the Interior shall make and publish such rules and regulations as he may deem necessary or proper for the use and

eral statute authorizes a federal magistrate to revoke a state driver's license for driving while intoxicated. Notwithstanding this fact, the Magistrate in this case revoked appellant's driving privileges pursuant to authority granted by a state statute, Virginia Code § 46.1–441.1. This action exceeded the limits of his authority.

Absent Congressional authorization, the Commonwealth of Virginia cannot empower federal courts or federal magistrates to revoke driving privileges within its boundaries. The authority of federal courts derives not from the laws of the several states, but from the Constitution through the acts of Congress. *See* U.S. Const. art. III; 18 U.S.C. § 3231 (granting federal district courts original jurisdiction over crimes against the United States); 18 U.S.C. § 3401 (authorizing federal magistrates to hear misdemeanor cases); *United States v. Worrall*, 2 U.S. (2 Dall.) 384, 1 L.Ed. 426 (1798) (federal courts may punish only those acts declared to be crimes by Congress). Given this, it is axiomatic that federal magistrates, like federal district courts, may not impose a punishment beyond that permitted by the applicable federal statute. *United States v. Best*, 573 F.2d 1095, 1100 (9th Cir.1978). Nor should federal courts use state law to alter or expand Congressionally enacted penal statutes. *United States v. O'Byrne*, 423 F.Supp. 588, 590 (E.D.Va.1973). In the case at bar, therefore, the Magistrate cannot rely on a Virginia statute to expand the permissible punishment beyond that allowed by federal law.

In a further effort to sustain the Magistrate's license revocation order, the government argues that the required Congressional authority to revoke appellant's state issued driver's license exists in the Assimilative Crimes Act (the "ACA"), 18 U.S.C. § 13.[5] Spelled out, the government's position is that the ACA, and specifically Section 13(b), evidences a clear Congressional intent to enable federal courts to revoke drivers' licenses in connection with DWI convictions. A threshold and fatal obstacle to the government's position is that the appellant was not charged under the ACA. *See United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir.1988) (court is not to determine defendant's guilt or innocence for crimes that were not charged in the indictment), *cert. denied*, —— U.S. ——, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989).

Beyond this, it is readily apparent that the ACA, by its terms and given its purpose, has no application to the facts at bar. "The purpose of the Assimilative Crimes Act ... is to provide a set of criminal laws for federal enclaves by use of the penal law of the local state 'to fill in the gaps in federal criminal law.'" *United States v. Brown*, 608 F.2d 551, 553 (5th Cir.1979) (citations omitted); *see also United States v. Broadnax*, 688 F.Supp. 1080, 1081 (E.D. Va.1988) (ACA fills in gaps resulting from failure of Congress to prohibit certain conduct). Under the ACA, therefore, state DWI laws may be assimilated and used in federal courts if there is no applicable federal law, *i.e.*, "a gap". But prior to 1988, there was doubt that a federal court could revoke a license in connection with a DWI

management of the parks, monuments, and reservations under the jurisdiction of the National Park Service, and any violation of any of the rules and regulations authorized by this section ... shall be punished by a fine of not more than $500 or imprisonment for not exceeding six months or both, and be adjudged to pay all costs of the proceedings.

**5.** 18 U.S.C. § 13 provides:
(a) Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State ... in which

such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.
(b) For purposes of subsection (a) of this section, that which may or shall be imposed through judicial or administrative action under the law of a State ... for a conviction of operating a motor vehicle under the influence of a drug or alcohol, shall be considered to be a punishment provided by that law. Any limitation on the right or privilege to operate a motor vehicle imposed under this subsection shall apply only to the special maritime and territorial jurisdiction of the United States.

conviction under an assimilated state law. This doubt stemmed from prevailing case law holding that revocation of a driver's license was a regulatory, not a penal, sanction.[6] Revocation, therefore, was not a "punishment" within the ACA's express limitation that federal and state defendants should be "subject to a like punishment". *See* 18 U.S.C. § 13(a). In 1988, therefore, Congress added Section 13(b) to "close a loophole in the [ACA] which [prevented] federal judges from imposing license suspensions, alcohol education programs, and other non-jail term sanctions on persons convicted of driving under the influence." 134 Cong.Rec. S7453 (1988). Section 13(b) explicitly authorizes federal judges and magistrates, when sentencing a defendant convicted pursuant to an assimilated state drunk driving law, to revoke driving privileges on the federal enclave if revocation is an authorized state sanction.

But the government's reliance on Section 13(b) in the case at bar is misplaced. The ACA is inapplicable here. It applies only where there is a gap in federal criminal law, not where "any enactment of Congress" already punishes the conduct. 18 U.S.C. 13(a).[7] There is no gap here; 36 C.F.R. § 4.23(a) exists and precludes assimilation of any Virginia DWI statute.[8] It specifically prohibits the conduct for which appellant was convicted.[9] The Regulations, therefore, preclude assimilation of Virginia law. Put another way, Section 13(b) cannot apply unless Section 13(a) applies. And, in the instant case, Section 13(a) is inapplicable because there is no gap in the federal criminal law. Therefore, Section 13(b) has no application here. Moreover, even assuming the ACA's applicability here, Section 13(b) clearly limits the license revocation authority to the confines of the federal enclave. The Magistrate's sentence was not so limited. For this reason alone, reversal would have been required.

**6.** *See, United States v. Snyder,* 852 F.2d 471, 474 (9th Cir.1988) (overturning a federal magistrate's revocation of a driver's license because, under California law, revocation is a regulatory, not criminal, sanction); *United States v. Rowe,* 599 F.2d 1319, 1320 (4th Cir.1979) (suspension of license in Virginia for refusal to take breathalyzer test is an administrative, not criminal, penalty); *cf. United States v. Woods,* 450 F.Supp. 1335 (D.Md.1978) (defendant charged with DWI under predecessor to 36 C.F.R. § 4.23(a) sentenced to fine and imprisonment). *But cf. United States v. Robertson,* 638 F.Supp. 1202 (E.D.Va.1986) (sentence for DWI on a military reservation under assimilated Virginia statute included fine, imprisonment, and license revocation). Courts also expressed a federalism concern that such revocations by the federal judiciary were too intrusive on state regulation of traffic safety. *United States v. Lincoln,* 581 F.2d 200, 202 (9th Cir.1978) (citing *United States v. Best,* 573 F.2d 1095, 1101–02 (9th Cir.1978)).

**7.** This case is distinguishable from cases stating that the Uniform Code of Military Justice ("UCMJ") does not preclude assimilation of state drunk driving laws. This line of cases interprets the ACA's requirement that the assimilated state law not be preempted by any "enactment of Congress" to mean enactments of general applicability. Since the UCMJ is applicable only to the military, it is not generally applicable and, therefore, does not bar assimilation. *United States v. Walker,* 552 F.2d 566, 568 n. 3 (4th Cir.), *cert. denied,* 434 U.S. 848, 98 S.Ct. 157, 54 L.Ed.2d 116 (1977); *see also United*

*States v. Mariea,* 795 F.2d 1094 (1st Cir.1986) (citing *Walker*); *United States v. Fulkerson,* 631 F.Supp. 319 (D.Haw.1986) (same). Because the National Park Service Regulations, including 36 C.F.R. § 4.23, apply generally to the public, there is no bar to preclusion here.

**8.** Properly enabled regulations, like the National Park Service regulations at issue here, clearly qualify as Congressional enactments. *See United States v. Adams,* 502 F.Supp. 21, 24 (S.D.Fla. 1980) (federal regulation prohibiting carrying a concealed weapon in a federal building precluded assimilation of an analagous state statute).

**9.** At present, a split exists among the circuits as to whether preclusion requires that Congress proscribe merely the defendant's generic conduct or that it proscribe the specific conduct with which the defendant is charged. *Compare United States v. Butler,* 541 F.2d 730 (8th Cir. 1976) (in determining whether the ACA is applicable, the issue is whether Congress had intended to punish the generic conduct in question, not whether Congress had made the precise act penal) *with United States v. Smith,* 574 F.2d 988 (9th Cir.) (requiring an act of Congress to punish the precise acts upon which an ACA conviction depends in order to oust application of the state statute), *cert. denied, sub nom. Williams v. United States,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978). This split is immaterial under the facts at bar. A specific proscription is obviously the more limiting case; federal statutes that precisely prohibit conduct preclude assimilation.

The government makes two additional arguments in support of the Magistrate's imposition of the license revocation penalty. First, the government asserts that assimilation of the state license revocation penalty was appropriate under the assimilation provision found in the Regulations themselves. Thus 36 C.F.R. § 4.2(a) provides:

> Unless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law. State law that is now or may later be in effect is adopted and made a part of the regulations in this part.

The government asserts that the purpose behind this provision is to adopt "all applicable and nonconflicting vehicle and traffic laws of the State." Because the Regulations are silent with respect to license revocation, the government contends that this provision assimilates Virginia Code § 46.1–441.1, thereby granting license revocation power to federal judges and magistrates. The Achilles' heel of this argument is the plain meaning of the regulation's opening phrase: "Unless specifically addressed by regulations in this chapter." 36 C.F.R. § 4.2(a). Driving while intoxicated is "specifically addressed" in Section 4.23(a)(2) of the Chapter. Given this there can be no assimilation through the regulatory provision. And it is irrelevant that the regulation, while proscribing DWI, is silent as to license revocation. What matters is that the Regulations "specifically address" both the proscribed conduct, DWI, and the appropriate penalty for it. That the state may allow additional and different kinds of penalties is irrelevant. Were this not so, the Regulations would be required to "specifically address" every existing and perhaps conceivable type of state DWI penalty in order to preclude assimilation. This nonsensical result is not required by the language of the Section 4.2(a), and was surely not intended by the drafters.

Finally, the government asserts that revocation of appellant's driving privileges is a valid condition on Knott's sentence of probation. *See* 18 U.S.C. § 3563. While it is true that the Magistrate could have imprisoned the appellant for six months, 36 C.F.R. § 1.3, and thus kept her from driving, it does not follow that the Magistrate can revoke her driver's license. Congress, through the Regulations, has expressly defined and limited the penalties for violation of National Park Service regulations. *See* 16 U.S.C. § 3. License revocation is not included among the defined penalties and is a penalty that is different in kind from imprisonment for up to six months. The government has not cited, nor has the Court found, any statute or precedent suggesting that revocation of driving privileges within a sovereign state is an appropriate condition of federal probation.[10]

For the reasons stated above, the revocation of appellant Laurie A. Knott's driver's license must be REVERSED. Nothing in this opinion, however, should be interpreted to prevent the Commonwealth of Virginia from taking whatever action it deems appropriate should it be informed of the underlying conviction. Nor does this opinion prevent any person from forwarding the appellant's DWI conviction to Virginia's Department of Motor Vehicles for its consideration.

An appropriate order will issue.

---

10. The government did not argue, nor does the Court address, whether or not federal magistrates have inherent power under the Regulations to revoke driving privileges within the federal enclave for a DWI conviction. *Cf. Cox v. United States,* 551 F.2d 1096, 1098 (7th Cir. 1977) (inherent power of federal district courts to impose consecutive sentences not affected by prior sentencing statute, 18 U.S.C. § 3568 (repealed 1986)). *But cf. United States v. Elkin,* 731 F.2d 1005, 1010 (2d Cir.) (federal courts have no inherent power to order restitution or to suspend the imposition of a sentence), *cert. denied,* 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984).